BRONSTER HOSHIBATA
Margery S. Bronster
Email: mbronster@bhawaii.net
Robert M. Hatch
Email: rhatch@bhhwaii.net
1003 Bishop Street, Suite 2300
Honolulu, Hawai'i 96813
Telephone No.: (808) 524-5644
Facsimile No.: (808) 599-1881

Bruce L. Jorgensen, Bar No. 53
Email: retireeslawyer@yahoo.com
c/o 405 Silverhill Road
Walterboro, S.C. 29488
Telephone: (845) 820-5721

Stephen C. Woodruff
Email: scwlaw.spn@gmail.com
Second Floor, Marg's Kitchen Bldg.
Chalan Hagoi at Mt. Carmel
P.O. Box 500770
Saipan, MP 96950
Telephone No.: (670) 235-3872
Facsimile No.: (670) 235-3873

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| BETTY JOHNSON on behalf of herself, and as a representative of a class of similarly-situated persons,<br><br>Plaintiff,<br><br>vs.<br><br>BENIGNO R. FITIAL, Governor of the Commonwealth of the Northern Mariana Islands ("CNMI"); ADELINA C. ROBERTO, Fund Trustee and Vice Chairwoman; NACRINA BARINAS, Fund Trustee; RICHARD S. VILLAGOMEZ, Fund | CIVIL CASE NO. 09-00023<br><br>SECOND AMENDED COMPLAINT |

Administrator; LARISSA LARSON, Acting Secretary of the CNMI Finance Department; CNMI GOVERNMENT; NORTHERN MARIANA ISLANDS RETIREMENT FUND; NORTHERN MARIANA ISLANDS RETIREMENT FUND BOARD OF TRUSTEES; CNMI DEPARTMENT OF FINANCE; CNMI DOES 1-95 in their official and personal capacities;

Defendants.

**SECOND AMENDED COMPLAINT**

Plaintiff, on behalf of themselves and all others similarly situated, allege and aver as follows:

**INTRODUCTION**

1. This class action arises out of the Commonwealth of the Northern Mariana Islands' ("CNMI") breach of its contractual and constitutional obligations to provide government employees "membership in an employee retirement system" in which their "accrued benefits … shall neither be diminished nor impaired." N. Mar. I. Const., art. III, § 20 (a).

2. Plaintiff brings this action on behalf of herself and a Class of similarly-situated persons who are retired members of the Northern Marianas Retirement Fund ("Fund") or persons eligible for survivor's benefits of retired members of the Fund.

3. Plaintiff and the Class have accrued retirement benefits and Defendants are obligated by the CNMI Constitution to insure that these benefits are provided to Plaintiff and the Class without impairment or diminishment. N. Mar. I. Const., art. III § 20.

4. The CNMI created the Fund to comply with its obligations under N. Mar. I. Const., art. III, § 20 (a) and the Agreement of the Special Representatives on Future United States Financial Assistance for the Northern Mariana Islands, Part II, 4 (h). 1 CMC § 8301. It was created to be an actuarially sound pension system funded by taxes and mandatory contributions by the CNMI and its employees.

5. Instead of upholding its obligation to fund and support an actuarially sound retirement system for the Class "in which their accrued benefits shall neither be diminished nor impaired," the CNMI chronically failed to pay its legally required contributions and then suspended government contributions altogether. PL 15-15 (suspending government contributions); PL 15-70 (identifying an unfunded liability of more than $470 million as of October 1, 2004). In addition, the CNMI has failed to pay the hotel occupancy and alcohol container taxes to the fund as required by 1 CMC § 8365. Finally, the CNMI passed a law purporting to insulate itself from any obligation to pay any money judgment entered by a CNMI court. 1 CMC § 7207 ("Except for funds appropriated for settlements and awards, no court may require the disbursement of funds from the Commonwealth Treasury or order the reprogramming of funds in order to provide for such disbursement. Any final judgment of a court shall be paid only pursuant to an item of appropriations for settlements and awards.").

6. The CNMI Superior Court previously found Public Law 15-15 unconstitutional and awarded the Fund over two hundred and forty million dollars in damages, but the Fund has made little effort to recover on the judgment. Instead, the Fund filed bankruptcy in an effort to cut retirement benefits by 58% in violation of N. Mar. I. Const., art. III, § 20 (a) and its fiduciary obligations to collect the amount it is owed by the CNMI.

7. In its bankruptcy filings the Fund admitted that because the CNMI has not paid the money to it as required by law, the Fund will be completely exhausted and unable to pay any retirement benefits after 2014. The Fund also noted that it "operates in a jurisdiction where, inter alia, Court judgments may be ignored and/or not enforced."

8. Most recently, the Governor promulgated Executive Order No. 2012-06 which purports to dissolve the Fund, suspend all laws and regulations that relate to the Fund, and place it under the direct control of the Governor. The Governor further claims that by doing so he can immediately terminate all litigation initiated by the Fund against the CNMI for its failure to pay the Fund the amounts required by law.

9. The Governor claims dictatorial power to ignore the law and seize the Fund by citation to article III section 10 of the CNMI Constitution which states, "The governor may declare a state of emergency in the case of invasion, civil disturbance, natural disaster, or other calamity as provided by law, and may mobilize available resources to respond to that emergency." CNMI Const. art. III § 10.

10. Executive Order No. 2012-06 is clearly illegal. The CNMI's chronic failure to pay the Fund the money it owed by law is not an "invasion, civil disturbance, natural disaster, or other calamity as provide by law." In fact, the alleged disaster is not an act of nature (as required by the Constitution) and is, instead, entirely a creation of the CNMI's failure to follow the law by paying the amounts required by the law into the Fund.

11. The Fund's bankruptcy filing and the Governor's Emergency Order are further evidence that Defendants have diminished and impaired the accrued benefits of Plaintiff and the Class in violation of the law. And this federal court is the only viable means for the Plaintiff and the Class to seek protection of their legal rights.

12. Plaintiff seeks to secure for the Class all of their legal rights to their accrued benefits as guaranteed by law and to enjoin any further action by Defendants that may impair those rights.

## PARTIES

### Plaintiff

13. Plaintiff Betty Johnson is a citizen of the U.S. who resides and is domiciled in the U.S. She is a former employee of the CNMI Government and is entitled to full retirement benefits as its beneficiary.

14. Plaintiff seeks to represent a class pursuant to Fed. R. Civ. P. 23 that consists of all retired members of the Northern Marianas Retirement Fund or persons eligible for survivor's benefits of retired members of the Fund (the "Class").

### Defendants

15. Defendant CNMI GOVERNMENT ("CNMI") is a government entity lawfully created by the Covenant to Create a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America.

16. Defendant NORTHERN MARIANA ISLANDS RETIREMENT FUND ("Fund") is an entity created by CNMI Public Law 1-43 and entrusted with control, supervision, and authority over retirement proceeds, benefits, annuities, and other property rights.

17. Defendant NORTHERN MARIANA RETIREMENT FUND BOARD OF TRUSTEES ("Board") is an entity entrusted with the control supervision, and authority over the Fund and is comprised of the below named Trustees. There are eight seats on the Board and six are currently vacant. The Board requires a quorum of four members to act. Board members are appointed by the Governor of the CNMI with the advice and consent of the Senate of the

CNMI. The Governor has recently nominated former Trustees Bernadito C. Palacios and Mariam DLG. Tudela but they have not yet been confirmed by the Senate.

18. Defendant BENIGNO R. FITIAL is the current Governor of the CNMI. Plaintiff brings this suit against FITIAL in both his personal and official capacities.

19. Defendant ADELINA C. ROBERTO was appointed by Fitial as a Fund Trustee on May 12, 2009. She also serves as the Fund's Vice Chairwoman. Plaintiff brings this suit against ROBERTO in both her personal and official capacities.

20. Defendant NACRINA A. BARCINAS was appointed by Fitial as a Fund Trustee on November 29, 2010. Plaintiff brings this suit against BARCINAS in both her personal and official capacities.

21. Defendant RICHARD S. VILLAGOMEZ is the Fund Administrator to whom on May 1, 2012, the Defendant Trustees ROBERTO, BARCINAS, and then Trustees Bernadito C. Palacios and Mariam DLG. Tudela purported to delegate authority to direct all Fund litigation in the expectation there would no longer be a quorum of Trustees upon the expiration of Palacios' and Tudela's terms as Trustees. Plaintiff brings this suit against VILLAGOMEZ in both his personal and official capacities.

22. Defendant CNMI DEPARTMENT OF FINANCE is a CNMI governmental entity within the Executive Branch.

23. Defendant LARISSA LARSON was appointed by Fitial as the Acting Director of the CNMI Department of Finance and currently serves in that capacity. Plaintiff brings this suit against LARSON in both her personal and official capacities.

24. Defendants CNMI DOES 1-95 are entities and persons, whose specific actions and roles, individually and/or in concert with each other or with other persons or entities, in the

circumstances giving rise to the claims alleged in this complaint are presently unknown to Plaintiff, who upon discerning these entities and persons through further proceedings in the action shall thereafter seek leave of the Court to more specifically identify these persons and entities as named defendants in this action.

25. The Claims below are raised against the Defendants in their individual and official capacities as employees of the CNMI, as all actions against them arise out of the scope of their employment.

**JURISDICTION AND VENUE**

26. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1367, and 1983.

27. Additionally, this Court has personal jurisdiction over all Defendants because at all relevant times they have lived and worked in the CNMI.

28. The Venue of United States District Court for the Northern Mariana Islands is appropriate pursuant to 28 U.S.C. §1391(e).

**CLASS ACTION ALLEGATIONS**

29. This action is properly brought as a plaintiff's class action pursuant to Fed. R. Civ. P. 23. Plaintiff brings this action on her own behalf and on behalf of a Class of "all retired members of the Northern Marianas Retirement Fund or persons eligible for survivor's benefits of retired members of the Fund."

30. The members of the Class are readily identifiable from the information and records in the possession or control of Defendants.

31. There are more than 1,000 members of the Class so individual joinder of all members is impractical.

32. Maintaining separate actions by individual Class members would create a risk of inconsistent or varying adjudications and the creation of incompatible standards of conduct.

33. Defendants have acted and refused to act on grounds that generally apply to the Class, so that injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

34. There are questions of law and fact common to the Class, which questions predominate over any questions affecting only individual members of the Class, and, in fact, the wrongs suffered and remedies sought by Plaintiff and other members of the Class are premised upon an unlawful scheme participated in by all Defendants. The principal common issues include, but are certainly not limited to the following:

a) Whether Defendants breached their contractual obligations to the Class;

b) Whether Defendants breached their statutory obligations to the Class;

c) Whether Defendants breached their obligations to the Class under the United States Constitution and the Constitution of the Commonwealth of the Northern Marianas Islands;

d) Whether Defendants breached their fiduciary duties to the Class;

e) Whether Defendants were unjustly enriched by their violations of the law;

f) Whether Defendants violated the Class's due process rights

g) Whether a Federal Receiver should be appointed;

h) The nature and extent of Class members' damages; and

i) Whether punitive damages are appropriate.

35. Plaintiff's claims are typical of those of the Class and are based on the same legal and factual theories.

36. Plaintiff will fairly and adequately represent and protect the interests of the Class. She has suffered injury in her own capacity from the practices complained of and is ready, willing, and able to serve as the Class Representative. Moreover, Plaintiff's counsel are experienced in handling class actions and actions involving unlawful fiduciary practices. Neither Plaintiff nor her counsel have any interest that might cause them not to vigorously pursue this action.

37. Certification of a plaintiff class under Fed. R. Civ. P. 23(b)(3) is appropriate in that Plaintiff and the Class members seek monetary damages, common questions predominate over any individual questions, and a plaintiff class action is superior for the fair and efficient adjudication of this controversy. A plaintiff class action will cause an orderly and expeditious administration of the Class members' claims and economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured. Moreover, the individual class members are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against the likes of the Defendants.

38. Alternatively, certification of a plaintiff class under Fed. R. Civ. P. 23(b)(1) is appropriate in that inconsistent or varying adjudications with respect to individual members of the Class would establish incompatible standards of conduct for the Defendants or adjudications with respect to individual members of the Class that would as a practical matter be dispositive of or impair the interests of the other members not parties to the adjudication and would substantially impair or impede their ability to protect their interests.

39. Alternatively, certification of a plaintiff class under Fed. R. Civ. P. 23(b)(2) is appropriate because Defendants have acted and refused to act on grounds that generally apply to

the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**FEDERAL RECEIVERSHIP ALLEGATIONS**

40. The appointment of a Federal Equity Receiver ("Receiver") is necessary and appropriate under Federal Rule of Civil Procedure Rule 66.

41. A federal court also has the power in equity to appoint a Receiver in order to protect a party's interest in property.

42. The fund is in imminent danger of exhaustion and will run out of funds before the end of 2014. Moreover, the Governor has announced he will seize the Fund and suspend all laws and regulations relating to the Fund which will further impair the existence of the Fund and the rights of Plaintiff and the Class.

43. The Fund's lack of sustainability and imminent depletion is due to the Government's chronic refusal to pay its required contributions and taxes and the Board of Trustee's mismanagement.

44. The depletion will result in irreparable harm to Plaintiff and the Class who rely on pension payments for their livelihood.

45. The mismanagement and lack of funding are a perpetual problem without any plan for resolution.

46. Defendants will in no way be prejudiced or harmed by the appointment of a Receiver.

47. Plaintiff requires the appointment of a Receiver in order to protect the Class's interests and property rights.

48. The Receiver should be granted powers that include the day-to-day management of the Fund in order to preserve the Fund assets, collect assets owed to the Fund, and continue the Fund's life.

**GENERAL ALLEGATIONS**

49. The Covenant to Establish a Commonwealth of the Northern Mariana Islands In Political Union With The United States Of America, 48 U.S.C. § 1801, created the CNMI and provides that it, along with the Constitution, treaties, and laws of the United States, will be the supreme law of the CNMI.

50. Article III § 20(a) of the CNMI Constitution states that "membership in an employee retirement system shall constitute a contractual relationship. Accrued benefits of this system shall be neither diminished nor impaired."

51. During the First Regular Session of 1978, the CNMI Legislature enacted Public Law No. 1-43 ("PL 1-43"), which established the Fund.

52. Public Law 6-17 ("PL 6-17"), enacted in 1989, superseded PL 1-43 and stated it was an "act to provide for an actuarially sound, locally funded pension system for government employees, and for other purposes."

53. PL 6-17 provides that all powers vested in the Fund shall be exercised by the Board of Trustees. 1 CMC § 8314(a).

54. PL 6-17 defines the Board of Trustees as the governing body responsible for the direction and operation of the affairs and business of the Fund. 1 CMC § 8313(f).

55. PL 6-17 provides that the Fund Members shall be comprised of all employees in the service of the Government, and created separate classes of members. 1 CMC § 8313(k)(l)&(m).

56. PL 6-17 grants the power to establish, maintain, and operate the Fund for the public employees to the Board of Trustees. Along with these powers comes the authority to establish the internal organization and management structure, adopt rules and regulations, and authorize expenditures. 1 CMC § 8316.

57. PL 6-17 provides that upon retirement, members shall receive annual retirement annuities based on a specific formula. 1 CMC § 8341.

58. PL 6-17 requires Fund Members to contribute six and one half percent (6 ½ %) of salary earned to the Fund and directs that such contribution shall be made by a deduction in salary. 1 CMC § 8361.

59. PL 6-17 requires the Government to make annual contributions to the Fund on an actuarially funded basis, but CNMI has failed to do so. 1 CMC § 8362.

60. Public Law 8-31 requires the CNMI to pay 30% of the hotel occupancy and 20% of the alcohol container taxes to the Fund, but CNMI has failed to do so. 1 CMC § 8365.

61. As required, Plaintiff and the Class contributed to the Fund during their employment by the CNMI.

62. Plaintiff and the Class have vested property interests in obtaining their retirement benefits from the CNMI.

63. Plaintiff and the Class are entitled to receive their constitutionally and contractually guaranteed benefits which cannot be "diminished nor impaired." U.S. Const. art. I § 10; CNMI Const. art. III § 20(a).

64. The Fund's assets and financial standing have deteriorated due to the CNMI's failure to pay its contributions as guaranteed by law, improper management by the Fund's Board of Trustees, and the Governor's illegal attempts at seizure.

65. The CNMI has failed to make its required contributions into the Fund, instead choosing to direct payments to other purposes.

66. During the Third Special Session of 2006, the House of Representatives adopted and the Governor signed Public Law No. 15-15 ("PL 15-15") which authorized suspension of the CNMI's contributions to the Fund.

67. The CNMI's Superior Court found PL 15-15 to violate the CNMI's and US's constitutions because it allowed the government to avoid its financial obligations, in violation of their contracts clauses and N. Mar. I. Const. art. III § 20(a).

68. The Court then ordered the CNMI to pay the Fund $241,689,475 and noted that the judgment will need to be updated to take into account additional damages that have accrued since April 15, 2009. The CNMI did not appeal the judgment and has never paid it.

69. CNMI passed 1 CMC § 7207 which purports to insulate CNMI from any obligation to pay the money judgment, but this statute is illegal and unconstitutional in violation of the CNMI and United States Constitutions as an impairment of contract, violation of the separation of powers, and violation of N. Mar. I. Const. art. III § 20(a).

70. To date, the judgment award has increased, yet the CNMI still has not paid it, and the Fund has not collected or executed on the judgment. Instead, the Fund filed an improper petition in bankruptcy in an effort to cut the Class's benefits instead of collecting the judgment. In addition, the Governor has announced that as soon as the bankruptcy stay is lifted he will seize the Fund, in part, to render the judgment void and prevent enforcement of it.

71. The viability and future of the Fund and Plaintiff's and the Class's accrued benefits have been impaired and diminished by the actions of Defendants.

72. The Fund requires a Receiver to manage the Fund, collect the judgment, enforce the CNMI's continuing obligation to pay its legally required and constitutionally guaranteed contributions and to direct payments to the Plaintiff and Class.

**COUNT I: BREACH OF CONTRACT**

73. Plaintiff and the Class re-allege and incorporate the allegations contained in paragraphs 1- 72 as though fully set forth herein.

74. PL 6-17 constitutes a contractual relationship between Plaintiff and the Class on one hand and the CNMI Government on the other.

75. Defendants have a contractual obligation to pay Plaintiff and the Class the pension benefits they promised to pay. Defendants are prohibited by U.S. Const. art. I § 10; CNMI Const. art. I § 1, and art. III §20(a) from impairing or diminishing their contractual obligations to pay Plaintiff and the Class, but that is exactly what Defendants have done by: (1) failing to pay their actuarially determined contributions; (2) failing to pay their statutorily required taxes; (3) passing legislation purporting to diminish or eliminate their obligations; (4) filing bankruptcy with a plan proposing to reduce Plaintiff and the Class's vested benefits; and (5) declaring an "emergency" to seize the Fund.

**COUNT II: VIOLATION OF THE UNITED STATES CONSTITUTION**

76. Plaintiff and the Class re-allege and incorporate the allegations contained in paragraphs 1-75 as though fully set forth herein.

77. PL 6-17 constitutes a contractual relationship between Plaintiff and the Class on one hand and the Government on the other.

78. Defendants have a contractual obligation to pay Plaintiff and the Class the pension benefits they promised to pay. Defendants are prohibited by U.S. Const. art. I § 10;

CNMI Const. art. I § 1, and art. III §20(a) from impairing or diminishing their contractual obligations to pay Plaintiff and the Class, but that is exactly what Defendants have done by: (1) failing to pay their actuarially determined contributions; (2) failing to pay statutorily required taxes into the Fund; (3) passing legislation purporting to diminish or eliminate their obligations; (4) filing bankruptcy with a plan proposing to reduce Plaintiff and the Class's vested benefits; and (5) declaring an "emergency" to seize the Fund.

**COUNT III: VIOLATION OF THE CNMI CONSTITUTION**

79. Plaintiff and the Class re-allege and incorporate the allegations contained in paragraphs 1-78 as though fully set forth herein.

80. PL 6-17 constitutes a contractual relationship between Plaintiff and the Class on one hand and the Government on the other.

81. Defendants have a contractual obligation to pay Plaintiff and the Class the pension benefits they promised to pay. Defendants are prohibited by U.S. Const. art. I § 10; CNMI Const. art. I § 1, and art. III §20(a) from impairing or diminishing their contractual obligations to pay Plaintiff and the Class, but that is exactly what Defendants have done by: (1) failing to pay their actuarially determined contributions; (2) failing to pay their statutorily required taxes; (3) passing legislation purporting to diminish or eliminate their obligations; (4) filing bankruptcy with a plan proposing to reduce Plaintiff and the Class's vested benefits; and (5) declaring an "emergency" to seize the Fund.

**COUNT IV: VIOLATION OF DUE PROCESS**

82. Plaintiff and the Class re-allege and incorporate the allegations contained in paragraphs 1- 81 as though fully set forth herein.

83. The contract established by PL 6-17 created a property right in Plaintiff and the Class's retirement benefits protected by the Fifth and Fourteenth Amendments to the US Constitution.

84. Defendants actions in (1) failing to pay their actuarially determined contributions; (2) failing to pay their statutorily required taxes; (3) passing legislation purporting to diminish or eliminate their obligations; (4) filing bankruptcy with a plan proposing to reduce Plaintiff and the Class's vested benefits; and (5) declaring an "emergency" to seize the Fund have directly interfered with Plaintiff and the Class's vested rights.

85. Defendants have never afforded Plaintiff or the Class a hearing before appropriating their benefits and Defendants have, instead, resisted all efforts by Plaintiff and the Class to have their claims heard.

86. The CNMI is barred from forcing Plaintiff and the Class to bear public burdens, which should be borne by the public as a whole.

## COUNT V: DEPRIVATION OF RIGHTS

87. Plaintiff and the Class re-alleges and incorporates the allegations contained in paragraphs 1-86 as though fully set forth herein.

88. Defendants violated 42 U.S.C. § 1983 by their actions as alleged herein.

89. Defendants intended for PL 6-17 to protect Plaintiff and the Class.

90. PL 6-17 unambiguously bound the CNMI into a contractual relationship with Plaintiff and the Class and created a federally protected property right for Plaintiff and the Class.

91. The retirement benefits were specifically described and apportioned in PL 6-17. That Plaintiff and the Class were to benefit from their own and the CNMI's contributions upon retirement was unmistakable.

92. Plaintiff and the Class are entitled to obtain their benefits.

93. Defendants deprived Plaintiff and the Class of their rightful benefits by taking actions that purport to directly eliminate their contractual obligation to Plaintiff and the Class.

**COUNT VI: BREACH OF FIDUCIARY DUTY**

94. Plaintiff and the Class re-allege and incorporate the allegations contained in paragraphs 1- 93 as though fully set forth herein.

95. The Trustees, the Governor and the Fund Administrator undertook their positions knowing they must act on behalf of and for the benefit of the Fund Members.

96. The Trustees, the Governor and the Fund Administrator had a fiduciary duty to Plaintiff and the Class as members of the Fund.

97. The Trustees and the Fund Administrator breached their fiduciary duties by doing the following:

a. not prudently managing the Fund;

b. hiring private outside counsel to sue the Government in Superior Court and pay them exorbitant fees to pursue the judgment for years without any results;

c. refusing to collect the judgment issued by the Superior Court;

d. hiring outside counsel to file an expensive and meritless bankruptcy petition for the purpose of diminishing and impairing accrued benefits; and

e. continuing to allow the Fund assets to decrease.

98. The Governor breached his fiduciary duties by doing the following:

a. suspending required employee contributions into the Fund;

b. refusing to pay the judgment issued by the Superior Court;

c. purporting to seize the Fund by executive order for the purpose of diminishing and impairing accrued benefits and to avoid payment of the Superior Court judgment; and

d. continuing to allow the Fund assets to decrease.

99. As Defendants have repeatedly acknowledged in bankruptcy court and elsewhere Plaintiff and the Class will not be able to collect their vested benefits absent intervention by a higher authority.

100. Plaintiff and the Class's injuries have been proximately caused by the Defendant's breaches of their fiduciary duties.

**COUNT VII: UNJUST ENRICHMENT**

101. Plaintiff and the Class re-allege and incorporate the allegations contained in paragraphs 1-100 as though fully set forth herein.

102. Defendants have been unjustly enriched at the expense of the Fund and the Plaintiff and the Class.

103. Instead of contributing to the Fund as required, the CNMI has had to use of such funds to use for other purposes.

104. Because the CNMI has not contributed but spent their funds on other things, Plaintiff and the Class will not receive their earned and vested benefits.

**PRAYER FOR RELIEF**

Wherefore Plaintiff and the Class respectfully request the Court:

1. Certify this as a Class Action;

2. Appoint a Federal Equity Receiver to manage the Fund;

3. Issue a Creditor's Bill in Equity;

4. Order the following specific performance by the Fund and Government:

a. Collect the Superior Court Judgment;

b. Pay or otherwise satisfy and bring current all CNMI obligations to the Fund;

c. Distribute appropriate retirement benefits; and

d. Enjoin Defendants from engaging in further conduct detrimental to the Plaintiff and the Class.

5. Award Plaintiff and the Class punitive damages against Defendants deemed to have acted unlawfully, wantonly, and willfully with our in concert with others.

6. Award Plaintiff and the Class their reasonable attorneys' fees and costs.

DATED: Honolulu, Hawai'i, September 11, 2012.

/s/ MARGERY S. BRONSTER
MARGERY S. BRONSTER
ROBERT M. HATCH
Attorneys for Plaintiff

DATED: Walterboro, S.C., September 11, 2012.

/s/ BRUCE L. JORGENSEN
BRUCE L. JORGENSEN
Attorney for Plaintiff

DATED: Saipan, MP, September 11, 2012.

/s/ STEPHEN C. WOODRUFF
STEPHEN C. WOODRUFF
Attorney for Plaintiff