F I L E D
Clerk
District Court

MAR 14 2022

for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| BETTY JOHNSON, on behalf of herself and as representative of a class of similarly-situated persons, | )Case No. 09-00023<br>)<br>)<br>)<br>) |
|         Plaintiff, | )<br>) |
|         v. | )**<u>CERTIFIED</u>** |
| RALPH DLG. TORRES, Governor of the Commonwealth of the Northern Mariana Islands ("Government"), et al., | )<br>)United States District Court<br>)1671 Gualo Rai Road<br>)Saipan, MP  96950<br>) |
|         Defendants. | )<br>) |
| _____ | )February 3, 2022<br>)1:43 p.m. |

TRANSCRIPT OF PROCEEDINGS

MOTION HEARING

BEFORE THE HONORABLE FRANCES TYDINGCO-GATEWOOD,
DESIGNATED JUDGE

STENOGRAPHICALLY REPORTED BY:

Heidi M. Doogan, RPR
Federal Official Court Reporter
1671 Gualo Rai Road
Saipan, MP  96950

```
 1    APPEARANCE OF COUNSEL:

 2    FOR THE PLAINTIFF:

 3    BY:   Nicole M. Torres-Ripple, Esquire
            NMI Settlement Fund
 4          P.O. Box 501247
            Saipan, MP 96950
 5

 6    FOR THE ADMINISTRATRIX:

 7    BY:   Robert T. Torres, Esquire
            Robert T. Torres Law Group
 8          P.O. Box 503758 CK
            Saipan, MP 96950
 9


10

11    ALSO PRESENT:

12    Joyce C.H. Tang, Trustee (via Zoom)

13    Colleen V. Manglona, Administratrix

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                          – – – – –

2        (In open court:)

3             THE COURT:  So do you want to go ahead and call the

4    case.

5             THE COURTROOM DEPUTY:  Yes.  Yes, I will do that.

6    This is civil action number 09-00023, Betty Johnson, et al.,

7    versus Rob DLG. Torres, et al., coming up for a motion hearing.

8             Will the parties please state your appearance.

9             MS. TORRES-RIPPLE:  Nicole Torres-Ripple for the NMI

10   Settlement Fund.

11            Online is Trustee Joyce Tang.  And with me in the

12   courtroom is Administrator for the Settlement Fund, Lillian

13   Pangelinan.

14            THE COURT:  Okay.  And thank you.  Good morning --

15   or, actually, good afternoon.  Hafa Adai, (speaking Chamorro).

16            Where are you guys, Middle Road?

17            THE COURTROOM DEPUTY:  Gualo Rai.

18            THE COURT:  This is Judge Tydingco-Gatewood.  What I

19   wanted to -- just -- just practicing my Chamorro.

20            All right.  I wanted to -- Ms. Lillian is --

21   Pangelinan, right; is that correct?

22            MS. TORRES-RIPPLE:  Correct.

23            THE COURT:  And she is seated behind you, if I'm not

24   mistaken, with the black mask on.  Is that right?

25            MR. TORRES:  Yes, Your Honor.
```

1           THE COURT:  Very well.  Thank you.  All right.  Go
2      ahead, continue on, Francine.
3           MR. TORRES:  Your Honor, good afternoon.  This is
4      Robert Torres on behalf of the Respondent for the Estate of
5      Manuel B. Villagomez.  Colleen Manglona, who is with me here at
6      counsel's table is the Administratrix.  And also present are --
7           THE COURT:  Okay.
8           MR. TORRES:  -- several members of the family, who
9      are the heirs in the Estate, so we're here for the Respondent,
10     the Administratrix.
11          THE COURT:  Okay.  Thank you.  And good afternoon,
12     Mr. Robert Torres.  Hafa adai, and Colleen Manglona, the
13     Administratrix, and the family members, who, I assume, are
14     sitting behind you and Ms. Manglona; is that correct,
15     Mr. Torres?
16          MR. TORRES:  Yes, Your Honor.
17          THE COURT:  Okay.  Very well.  Okay.  The Court has
18     before it a request by the Trustee as a motion requesting the
19     following relief:  That the Court declare that the -- this
20     Court has exclusive jurisdiction over any matters pertaining to
21     or arising under the Settlement Agreement.
22          Secondly, to stay all proceedings by any other court
23     that would seek to issue orders adjudicating the rights and
24     liabilities of the settlement fund or its members pertaining to
25     the Settlement Agreement.

1              And, thirdly, to enjoin the Administratrix from

2      asserting any claimed defenses or seeking any relief related to

3      the Settlement Agreement and the Settlement Funds claimed

4      against the Decedent Manuel B. Villagomez in any court other

5      than the United States District Court for the Northern Mariana

6      Islands.

7              This Court is sitting by designation, as all parties

8      know.

9              And who's going to argue this?  Will this be you,

10     Ms. Torres-Ripple?

11             MS. TORRES-RIPPLE:  Yes, Your Honor.

12             THE COURT:  Or Ms. Tang?  Okay.  Very well.

13             You may proceed.

14             MS. TORRES-RIPPLE:  Thank you.

15             First, I'd like to thank the Court for -- for

16     expediting -- for granting this expedited hearing.  Your Honor,

17     this is a simple, straightforward case.  We are here seeking

18     enforcement of Section 10.0(k) of the Settlement Agreement, the

19     Alternative Dispute Resolution provision, which applies to all

20     class members for claims of overpayment, and has been approved

21     be this Court.  There's no dispute that if a member were alive,

22     he or she would be required contractually to resolve a claim in

23     the Administrative Appeals process, but the transition

24     particulars argues without support that the same process should

25     not apply when a member passes away with a pending claim.  And,

1    in other words, the claim should be litigated outside of the

2    Administrative Appeals process.

3           Now, there's no question that this Court has

4    exclusive and continuing jurisdiction under the Settlement

5    Agreement to enforce its terms and entertain the settlement

6    funds motion.  It is well-established that Federal Courts

7    have -- have jurisdiction to enforce the Settlement Agreement

8    when the final order incorporates this terms of the Settlement

9    Agreement.  And this Court did so here.  This Court

10   incorporated the Settlement Agreement and consent judgment in

11   the final judgment approving the class action settlement.  The

12   Court reserved exclusive and continuing jurisdiction to

13   enforce -- to enforce and interpret the  Settlement Agreement

14   and its terms.

15          Now, with respect to the probate exception.  The

16   probate exception doesn't apply.  The Supreme -- the U.S.

17   Supreme Court has made clear that the application of the

18   probate exception is distinctly limited and narrow in scope.

19   It precludes the Federal Courts from -- from -- in

20   circumstances that involve the probator: annulment of a will,

21   the administration of the estate, and ordering the transfer of

22   funds or property in the custody of the State Probate Court.

23   We're not seeking any of this.  We are here seeking enforcement

24   of a term of the Settlement Agreement with respect to the

25   Alternative Dispute Resolution provision.  We are not asserting

1   control of the assets.  Now, the Administratrix cites two main

2   cases in support of its proposition that the probate exception

3   applies, but these are distinguishable.

4        The first case, the Carpenter's Trust Fund case in

5   Michigan, the Administratrix argues that this Court should hold

6   like the trust fund case held, when a member dies, the probate

7   court should -- mandates that a claimant bring a claim in the

8   probate court when the funds sought are in the hands of the

9   State Probate Court.  However, this is distinguishable.

10       We are here to ask that this Court enforce the

11   Administrative Appeals process.  If the Settlement Fund

12   prevails in that process, at that point, we would seek to

13   enforce the judgment.

14       The second case that the Administratrix cites is the

15   Balestra case.  They cite to this for the proposition that a

16   declaratory judgment seeking a share of the decedent's estate

17   would interfere with the distribution of the estate.  This is

18   also distinguishable.  The Settlement Fund does not seek an

19   adjudication of the claim of overpayment against the Decedent,

20   but rather the enforcement and interpretation of a contractual

21   term in the Settlement Agreement.  And this has been

22   incorporated in this Court's final judgment.

23       By way of example, the Administratrix asserts that if

24   this Court were to require the Estate to go through the

25   Administrative Appeals process, it would disturb the

1   distribution of property.  And they cite to the probate -- the

2   probate court's recent order approving the sale of the boat.

3   Right now, we're not adjudicating the claim.  We are seeking to

4   enforce.  And if we prevail on that claim of overpayment, we

5   would then seek to enforce it in the probate court.  Just like

6   any other creditor or claimant, we have the right to object to

7   distribution under the probate court.

8          Now, in addition to this, they argue -- the

9   Administratrix argues that there's some kind of transfer of

10  jurisdiction to the Administrative Appeals process.  This

11  assertion is factually and legally incorrect.  Nowhere in the

12  Settlement Agreement does it say that there's a transfer of

13  jurisdiction to the settlement fund appeals office.  This Court

14  didn't assign anything to the office.  We're here asking for

15  enforcement of the Alternative Dispute Resolution provision.

16  This is no different from a mortgage.  There are certain rights

17  afforded to a lender.  If -- if a person defaults, and if you

18  haven't paid off that mortgage, upon death, then your heirs are

19  still subject to the terms of the mortgage, including any

20  arbitration provision.  The Settlement Agreement requires all

21  members to go through the Administrative Appeals process.

22         Now, as an aside, the Administratrix further confuses

23  the issue by discussing untimely claims in other probate cases.

24  This has nothing to do with this case.  It's irrelevant to the

25  issue before this Court.  However, I'd be happy to address it

1    briefly.

2              At the time the Settlement Fund wasn't aware of

3    probate -- certain probate cases.  When a member passes away,

4    there's no process by which the Government informs the

5    Settlement Fund of the death of a certain -- of members.  And

6    since then, we've taken measures to ensure that this doesn't

7    happen again, including reviewing the newspaper notices on a

8    daily basis, reviewing the court calendar, the Superior Court

9    calendar, notifying the surviving spouse of pending claims, or

10   pending appeals, and prioritizing the audit of deceased members

11   and those deceased members with surviving spouses.

12             This case boils down to this:  There's a contract

13   between the Settlement Fund and the member, which is binding on

14   the members, heirs, successors, and assigns under the terms of

15   the Settlement Agreement.  They are contractually bound under

16   Section 10.0(k) of the agreement to resolve disputes with

17   respect to the claim over -- through the Administrative Appeals

18   process.

19             Now, finally, as the Court had pointed out at the

20   beginning, the Settlement Fund seeks a declaration that this

21   Court has exclusive and continuing jurisdiction on matters

22   relating to the Settlement Agreement, including the

23   Administrative Appeals process as it relates to deceased

24   members, heirs, successors, and assigns.  We seek an order

25   enjoining the Administratrix from asserting claims or defenses

1    relating -- or seeking relief relating to the Settlement

2    Agreement.  And the Settlement Fund's claim against the

3    Decedent outside of the Administrative Appeals process.  And to

4    the extent this Court needs additional time to issue a

5    decision, we seek an order directing a stay of proceedings by

6    any court outside this Court from issuing orders adjudicating

7    rights and liabilities of the Settlement Fund or its members as

8    it relates to the Settlement Agreement.

9         Thank you, Your Honor.

10        THE COURT:  I'm sorry.  So just -- okay.  So hold on

11   a second, Counselor.

12        MS. TORRES-RIPPLE:  Uh-huh.

13        THE COURT:  With regard to your last argument --

14        MS. TORRES-RIPPLE:  Yes, Your Honor.

15        THE COURT:  -- you're essentially asking -- you're --

16   can you hear me okay?

17        MS. TORRES-RIPPLE:  Yes, Your Honor.

18        THE COURT:  Are you able to hear me?  Okay.  Thank

19   you.  I'm in my courtroom, so I just -- okay.

20        So I'm just wanting to ask, are you asking the Court

21   to stay the probate action in the Superior Court of the CNMI?

22   Essentially, that's what you're doing.  You're just saying,

23   "Don't touch this matter"?

24        MS. TORRES-RIPPLE:  To the extent that -- to the

25   extent that this Court needs time to issue a decision on this

1    matter, yes.

2          THE COURT:  Well, I would not be inclined to do that,

3    but, don't worry, I can issue my decision quickly.  I don't

4    need a lot of time to issue a decision, but my -- I think

5    that -- I think it's clear to the Court that the probate

6    exception would bar such an action by this Federal Court to do

7    that to the State -- or the Territorial Court, so I -- I just

8    don't -- I'm not in agreement with that -- that argument.

9          I -- I do want to say -- so you're just saying just

10   for purposes of buying time, you're asking me to do that, but I

11   just don't think I have jurisdiction or authority to do that,

12   Counselor, Ms. Torres-Ripple.

13         So just to get back to, this is Mr. Villagomez, and

14   it was he that was a retiree who retired in March 1994.  And as

15   I recall looking at the facts of this case, as of April 30th,

16   2012, which is a long time ago, he was informed on May 7th,

17   2012, that he was being overpaid in the amount of $45,680.36.

18   And as -- as I, you know, continue to look at the facts, it

19   says now, if we fast-forward, you know, the Board continued to

20   pay him these overpayments and they did not -- there was no

21   resolution as to this overpayment issue until now we're --

22   we're -- it's coming to a head; is that correct?  Now, is that

23   correct, not that the appeals --

24         MR. TORRES:  The appeal was still --

25         THE COURT:  Right.  Okay.

1          MS. TORRES-RIPPLE:  The -- the --

2          THE COURT:  Okay.  So --

3          MS. TORRES-RIPPLE:  Sorry.  The --

4          THE COURT:  Go ahead.

5          MS. TORRES-RIPPLE:  Just to be clear, the appeal was

6   pending during the transition period when the Settlement Fund

7   took over.  So, yes, the appeal was pending.

8          THE COURT:  Right.  So -- so from the moment that he

9   received notice in 2012 to the time he passed away on May 10,

10  2021, and even up to now, he's still getting alleged

11  overpayments; is that correct?

12         MS. TORRES-RIPPLE:  There are no longer anymore

13  overpayments, because as of his date of death, it was -- once a

14  person dies, you're -- the benefits cease.

15         THE COURT:  Oh, I'm sorry.  So as of May 10th of

16  2021, then, he has no -- he has not received any -- there's

17  been no -- nothing else gone to his -- his account; that's

18  what you're saying, the moment he passes away?  And that amount

19  ended up at -- I just want to clarify something, over 65 -- or

20  59,000 -- or $56,913; is that correct?

21         MS. TORRES-RIPPLE:  Yes, the amount is $56,913.77.

22         THE COURT:  So from --

23         MS. TORRES-RIPPLE:  And it's not necessarily from the

24  moment that he passes.  It's from the moment we're informed

25  that somebody passes away.  So...

1          THE COURT:  Okay.

2          MS. TORRES-RIPPLE:  Yeah.

3          THE COURT:  So -- so whatever date that is, whichever

4  -- whichever is the date, okay.  So he -- so from 2012 to the

5  date that the -- that your office was informed that he had

6  passed away, there's an alleged overpayment amount that has now

7  amounted to $56,913.17, correct?

8          MS. TORRES-RIPPLE:  Your Honor, we actually -- what

9  we do with the computation of the overpayment, is we limit

10  the -- the overpayment amount to six years from the date of the

11  adverse decision letter.  So the date of the adverse decision

12  letter is May 2012, and it's six years from that date all the

13  way through his date of death.  And if there were -- there were

14  an overpayment, as in this case, after his death, because we

15  weren't notified on time, the overpayment is through five --

16  May 15, 2021.

17          THE COURT:  From what date to May 2021?

18          MS. TORRES-RIPPLE:  From May 7th --

19          THE COURT:  I guess, I'm -- can you clarify?

20          MS. TORRES-RIPPLE:  -- 2006.

21          THE COURT:  May 7.

22          MS. TORRES-RIPPLE:  2006.  So that's six years from

23  the date of the adverse decision letter, through May 15, 2021.

24  So it's little after his date of death on May 10th.

25          THE COURT:  Okay.  All right.  From May 7th, 2006.

 1              Okay.  All right.  And so on the first issue of

 2    jurisdiction, the -- the other side, the Administratrix, I'll

 3    say Ms. Manglona represented by Mr. Torres, is indicating

 4    that -- well, they first argue about diversity jurisdiction,

 5    federal question, and so forth.  So the Court doesn't agree

 6    with that.  But with regard to the issue of -- that you have

 7    pointed forward, is you're asking the Court to specifically

 8    rule on the very narrow interpretation of the Settlement

 9    Agreement that was approved by and worked on by -- by

10    Judge Faris; is that correct?  And that's Section --

11              MS. TORRES-RIPPLE:  Yes.

12              THE COURT:  -- 10?

13              MS. TORRES-RIPPLE:  K.

14              THE COURT:  Go ahead.

15              MS. TORRES-RIPPLE:  Yes, Section 10.0(k) of the

16    Settlement Agreement is what we seek to enforce, and that's the

17    alternative dispute.

18              THE COURT:  Right.  Okay.  So we're looking --

19              MS. TORRES-RIPPLE:  Uh-huh.

20              THE COURT:  Right.  The alternative dispute.  And so

21    we now have -- we have a mediator judge, Judge Collins, who is

22    handling the -- these -- the process, right, the appeals

23    process?

24              MS. TORRES-RIPPLE:  Yes, Your Honor.  So it's

25    mandatory medi- -- the process is mandatory mediation before

1    Judge Collins.  If we aren't able to resolve it at that point,

2    it goes to the hearing officer.  And if, you know, one party or

3    the other does not agree, it goes to an arbitrator for a final

4    decision without any further right to appeal.

5              THE COURT:  Okay.  I'm sorry.  So it goes to Judge

6    Collins first, then --

7              MS. TORRES-RIPPLE:  Yes.

8              THE COURT:  -- if they don't like his decision, it's

9    appealed to a hearing officer.  And then what happens after

10   that?

11             MS. TORRES-RIPPLE:  The arbitration -- the arbitrator

12   is -- kicks in, so the arbitrator would issue a final decision

13   and there's no further right to appeal.

14             THE COURT:  Okay.  And since -- since the rules and

15   regulations have been approved by the Court, how many of these

16   claims have been settled; do you have an idea?

17             MS. TORRES-RIPPLE:  You know, in our last report to

18   the Court --

19             Okay.  In our last report to the Court, we reported

20   that there was an audit of 132 files, 57 of which were

21   resolved, and 27 pending an administrative proceeding.  So this

22   was as of December 10, 2021.  Of course, this Court issued an

23   order appointing Judge Collins as the mediator.  And since

24   then, we actually started the process almost immediately.

25   We've since settled a few cases, and there are more cases up

 1  for mediation.
 2              THE COURT:  Okay.  Very well.
 3              All right.  I'll come back to you, then.  Thank you.
 4              Let me just hear from Mr. Torres.  Okay.
 5              MR. TORRES:  Your Honor, good afternoon.
 6              THE COURT:  Well,  Mr. Torres, wait.  Let me -- let
 7  me just ask you questions --
 8              MR. TORRES:  Sure.
 9              THE COURT:  -- Mr. Torres, if you don't mind.
10              MR. TORRES:  Nope.
11              THE COURT:  All right.  Let's see.  Thank you.  In
12  all your experience, you can handle this.  The -- the
13  complaint, the second-amended complaint, asserted that the
14  Federal Court had federal -- questioned jurisdiction over the
15  action.  And, as you know, no party ever contested jurisdiction
16  over the original action.  And the parties to the Settlement
17  Agreement consented to the Court's exclusive jurisdiction to
18  enforce and interpret any provision of the Settlement Agreement
19  and to enjoin any entity from pursuing any action that is
20  consistent -- inconsistent with the Settlement Agreement.  And
21  I -- you know, I cite -- the Court just cites to Settlement
22  Agreement, paragraph 28.  And the judgment contains similar
23  language.
24              As I -- as I review the documents filed by Ms. Nicole
25  Torres-Ripple, the Settlement Fund's emergency motion of that

1     Settlement Agreement, and I'm sure you're going to -- you're

2     not going to dispute that Mr. Villagomez was a member of the

3     settlement class and you're not going to dispute that he did

4     not opt out; is that correct?

5                  MR. TORRES:  That's correct, Your Honor.

6                  THE COURT:  And, also, with regard to the Settlement

7     Agreement, I'm certain that you probably will not -- well,

8     you're not going to dispute, as well, that any -- any heirs,

9     successors, and assigns to the parties, would be -- would also

10    have to abide by the Settlement Agreement terms, right?

11                 MR. TORRES:  Yes, Your Honor.

12                 THE COURT:  Okay.  And so, again, the judgment -- the

13    judgment also specifies -- specifies that, so I'm just -- so

14    I'm just curious on this issue of jurisdiction then, based on

15    that, then it seems to -- to me that it's clear that the

16    Administratrix, Ms. Manglona, is subject to the jurisdiction of

17    the Federal Court as well as to the terms of the Settlement

18    Agreement and judgment --

19                 MR. TORRES:  Okay.

20                 THE COURT:  -- wouldn't you say?

21                 MR. TORRES:  Well, I'll answer the question.  So

22    one -- one operative word in the -- in the Settlement Agreement

23    is the jurisdiction of the Court, not only to enforce,

24    Your Honor, but there's also to interpret and construe.

25                 THE COURT:  Okay.

 1          MR. TORRES:  Okay.  So that's -- that's my box that

 2     I'm going to stand on primarily.  Because the -- the case

 3     law -- from the case law that we've been reviewing, none of the

 4     cases discuss a process in -- under the jurisdiction of the

 5     Federal Courts over a probate matter, over a probate issue,

 6     any -- from Markham to Marshall, any of the cases cited, none

 7     of them ever discuss, even in the Carpenter's Trust case, none

 8     of them ever discuss --

 9          THE COURT:  Uh-huh.

10          MR. TORRES:  -- an administrative tribunal

11     adjudicating a claim in probate that sounds of probate.  It's

12     always the Federal Court, that's kind of my point.

13          THE COURT:  But are we -- but let -- but let me just

14     ask you, are we really adjudicating and trying to --

15     interfering with a probate estate, we're really not at this

16     point.  All that -- all that, look, let's just think about

17     this, we -- I mean, just on practical terms, and I'm -- I'm

18     thinking out loud here, so I may be wrong, so -- but, I'm just,

19     you know, as I think about using my common sense, we have the

20     Settlement Fund Trustee and she's saying, "Look, we just

21     interpret the contract.  Let us find out" -- let -- let -- and

22     the contract -- the contract, this particular section, this

23     particular paragraph, that we're talking about, we're

24     interpreting -- that this Court's interpreting is -- is --

25     includes this whole appellate process, this settlement claim

1    process.  And we're just saying, "Look, just go through the

2    process.  Everybody agreed to it, just go through it."  Who's

3    to say that Judge Collins or whoever, you know, if they go to a

4    hearing officer, an arbitrator won't come back and say, "Look,

5    from this period to this period, yeah, maybe" -- and I don't

6    know if I'm thinking out loud too loud -- but maybe the

7    Retirement Fund screwed up, and it's their fault and it's

8    not -- it's not the Manglona family fault.  But for some period

9    of time, it could be -- it could be, like, okay, maybe I'm

10   going to give them a break, you know, for some period of time.

11   Whatever that period of time might be in the -- in the range

12   that -- that the Trustee has discussed.  I mean, they're just

13   really saying, "Just go through the process."  Once the process

14   is done, and there's a -- a decision, and it's completed, then

15   there's no reason why the Administratrix can't still proceed

16   with her probate matter in -- in the local court.  I mean, she

17   can proceed with it even simultaneously.  But I'm just saying,

18   as it relates to this particular property, this particular

19   amount of money that we're talking about, why can't they do

20   that?

21              MR. TORRES:  Okay.

22              THE COURT:  And doesn't -- and doesn't the probate

23   exception, you know -- you know, there's a question as to

24   whether or not is the Court precluded from providing the relief

25   requested by the Settlement Fund under the probate exception?

1          And I'm -- all of you cited the Marshall -- the

2     Marshall v. Marshall case, which is really a fascinating case,

3     and the Markham case.  You know, just looking at that very

4     narrow exception, what about that?  I mean, just the way in

5     which --

6               MR. TORRES:  Well --

7               THE COURT:  -- that has been interpreted and

8     reviewed.

9               MR. TORRES:  Okay.  I -- I want to answer it, but

10     I'm -- you know, the Court's thrown -- I want to answer the

11     question, Your Honor, and I want to engage in the discussion

12     and so, but we need to clarify --

13               THE COURT:  Go ahead.

14               MR. TORRES:  -- some facts here, because -- I'll give

15     you an example.

16               THE COURT:  Okay.

17               MR. TORRES:  On -- on her own action, the Trustee

18     says here today when the Court asked, "You're asking for

19     56,000." And the Trustee answered your question and said,

20     "Well, wait a minute, we're only asking for six years, from --

21     from either 2012," right.  Doesn't the Court wonder, "Well, why

22     are you asking only for six years since you claimed 46,000 in

23     2012?  Wouldn't it be more a whole much more than six years?"

24     The answer to that, is a claim in contract theory in the CNMI

25     is limited to six years for a breach of contract claims.

1          That's why --

2          THE COURT:  We have to -- we have to respect -- yeah.

3          MR. TORRES:  Right, but --

4          THE COURT:  I mean, this Court, we're required to

5    respect the law of -- of the Commonwealth.

6          MR. TORRES:  But that's -- that's not my point.  Is

7    that you have the Trustee making these calls and they can make

8    the calls as to when they pick and choose what they're going to

9    enforce and then the Administratrix -- may I use the ELMO,

10   Your Honor --

11         THE COURT:  Yes.

12         MR. TORRES:  -- just to drive the point home?

13         THE COURT:  Sure.  Go ahead.

14         MR. TORRES:  So I'm showing on page 20 of the -- of

15   this -- of the Settlement Agreement.  And this is page 20 that

16   talks about the Court, the Trustee's duties, okay?

17         THE COURT:  Uh-huh.

18         MR. TORRES:  And the Trustee's duties -- and this is

19   from 2013.  Remember that in May 2012, Mr. Villagomez perfected

20   his appeal.  So in a year later, a member of the class, he's

21   bound, yes.  And here's what he's bound to:  When the Trustee

22   has to establish policies for members of -- a resolution of all

23   disputes consistent with due process and a right to a final

24   appeal.  But, Your Honor, it's through an independent

25   arbitrator selected by the Trustee and approved by the District

1    Court.  There shall be no further appeal from the decision of

2    the arbitrator.  And so, this is -- and then the next paragraph

3    talks about the Trustee, which she never did here, can petition

4    the Court for instructions or for declarations as to the

5    construction of this agreement or the powers of the Trustee.

6            Now --

7            THE COURT:  Okay.

8            MR. TORRES:  Okay.  So what happens after that?

9    Well, what happens after that, Your Honor, is you issued an

10   order in 2015.  This is your order.  There's been many orders

11   by this Court, but in this order of December '15 with

12   Mr. Villagomez's appeal pending on the third page, you had

13   the -- the Trustee finalized the administrative rules and

14   procedures.  And the Court -- the Court approved the rules and

15   find them to be reasonable in the implementation and appointed

16   three administrative hearing officers and one arbitrator.

17   And -- and they're all there in 2015.  Your Honor, nothing

18   happens for Mr. Villagomez's appeal from 2015 when everything

19   was in place.  And somehow, you know, it's -- it's blindly

20   disregarded that wait a minute, he's been waiting since 2012.

21   Everything is in place, but then in their claim, they pick and

22   choose six years.  We'll only go six years.  Well, what about

23   Mr. Villagomez's due process that he was denied all the way up

24   until the time that he died?  Why can't he assert defenses of,

25   you know, laches and breach of contract, which is what the

1    Administratrix had asked when going for the -- the Superior

2    Court.

3              And, Your Honor, I mean, I -- I think it's fair, if

4    he's a member of the Settlement Fund, for the Administratrix

5    today to turn to Your Honor and say, "Your Honor, can they

6    explain why they waited, you know, at least from 2015 and never

7    did anything, and now we've got Judge Collins?  We had

8    mediators back then and they didn't do anything."

9              So, okay -- so let's go back to the -- to the issue

10   here.  The Trustee stands on --

11             THE COURT:  Okay.  Okay, so -- okay, hold on a

12   second, Mr. Torres, so -- I mean, I think you make a point.  So

13   we have -- let me just get the times down here.

14             MR. TORRES:  Yeah.

15             THE COURT:  The -- let me just make sure.  Okay.  So

16   we have the retiree -- I mean, Mr. Villagomez retiring on March

17   1, 1994.

18             MR. TORRES:  Right.

19             THE COURT:  And then he receives notice in 2012?

20             MR. TORRES:  Yes.

21             THE COURT:  We -- okay.  We see that.  And then --

22   and then in 2015, you're correct, the Court did sign an order.

23   There was -- in 2015 an order --

24             MR. TORRES:  Settlement Agreement --

25             THE COURT:  -- order indicating that looks --

1          MR. TORRES:  Settlement Agreement in 2013.

2          THE COURT:  Right.

3          MR. TORRES:  Right.

4          THE COURT:  There's and -- and that's in -- I'm

5    sorry, 2015.  In 2015, there's approval of the NMI Settlement

6    Funds Appeals Process, right?  We see that?

7          MR. TORRES:  Yep.

8          THE COURT:  Okay.  We've got that.  So 2015.  And

9    then -- so then '16, '17, '18, '19 -- six years later, Mr.

10   Villagomez dies on May 10th, 2021, right?

11         MR. TORRES:  Correct.

12         THE COURT:  Right?

13         MR. TORRES:  Yep.

14         THE COURT:  Okay.  And then -- and then it's not

15   until -- until -- let's see.  Okay.

16         MR. TORRES:  Not now --

17         THE COURT:  January 10th, 2022, the Settlement Fund,

18   so that's just a few -- well, that's just last month --

19         MR. TORRES:  Yep.

20         THE COURT:  -- this is February, the Settlement Fund

21   writes to the Administratrix, your client, to inquire whether

22   she would stipulate to a limited stay of the probate action,

23   okay.

24         Okay.  But, at the same time,  there's an indication

25   that now since -- until the claim of overpayment had grown to

1   $56,913.17, that's what we were --

2           MR. TORRES:  Right.

3           THE COURT:  Remember, I was asking that of --

4           MR. TORRES:  Right.

5           THE COURT:  -- Ms. Ripple-Torres [sic].  So that's

6   2021.  So you're -- you're saying that from the -- from the

7   period of 2015 to now, your client wants to be able to appeal

8   her -- her position, whatever that position might be, whether

9   it's legal defenses or what other type of --

10          MR. TORRES:  Well, hold on, Your Honor.

11          THE COURT:  -- picture -- excuse is -- go ahead.

12          MR. TORRES:  My apologies.

13          THE COURT:  Uh-huh.  Go ahead.

14          MR. TORRES:  When -- what -- when the Administratrix

15  requested a status conference, right, she asked --

16          THE COURT:  Uh-huh.

17          MR. TORRES:  -- asked the Superior Court for a status

18  conference in order to request the Settlement Fund to clarify

19  and give some more details as to the basis of its claim, what's

20  the theory of your recovery?  Is it contract theory?  Are we

21  able to raise any defenses?  Are we able to, you know, what

22  is -- give the particulars of your claim and so that the

23  Administratrix can make a determination, as she should, with

24  every Administratrix, to determine whether or not to allow or

25  disallow.  She has to -- that's her fiduciary duty, right?

1          THE COURT:  Okay.

2          MR. TORRES:  So -- and that's what happened.  And

3    then the Fund didn't respond to that, they only came in on the

4    status conference and responded and asked -- didn't even ask

5    for a stay, but requested the Court to -- this Court to do --

6    they didn't file any motion for a stay.  I mean, it was just --

7    there was no response to -- to our filing after they filed

8    their claim in Superior Court, and that's the first point of

9    my -- of my argument, is the ad- -- the Trustee has come into

10   the Superior Court, like in the Hofschneider and the Benavente

11   cases to file their claims.

12          They say, "Well, you know, we didn't know then and so

13   it was untimely," that's not -- that's irrelevant.  The point

14   is, they came before -- because Markham stands for the

15   proposition that state courts of probate are the ones with

16   jurisdiction, but not -- not totally exclusive, unless, you

17   know, with the Federal Courts, but they didn't cite --

18          THE COURT:  Uh-huh.

19          MR. TORRES:  -- the -- they didn't cite the

20   Settlement Agreement.  They didn't cite anything to say the

21   administrative process.

22          And by the way, in Benavente, as I pointed out, the

23   Estate of Benavente, Benavente didn't even appeal his -- the

24   adverse decision.  He didn't appeal it.  And they -- and

25   they -- so when they didn't appeal it, they just said, "Okay,

1   well, we're just going to stay your appeal," even when he

2   didn't appeal it.  And so they came in after he died, and that

3   was untimely as well.  My point is that the -- the Trustee, if

4   she knows the Settlement Agreement and if she knows the

5   jurisdiction of this Court, and those two cases never did, and

6   even -- even in her motion for a stay, has never brought up the

7   probate exception.  Your Honor brought up the probate exception

8   discussion, and thank you for that, because that's the issue.

9   That's the issue here.  And the --

10          THE COURT:  Yeah.

11          MR. TORRES:  -- and the Trustee stands on, well, we

12   have an agreement.  But, Your Honor, my problem, if I may call

13   it that, I struggle with the fact that all the cases from

14   Markham and its progeny, say that it's not an administrative

15   tribunal.  I know Your Honor is saying, "Well, what's the harm

16   if" -- "if you go to mediation" -- by the way, probate courts

17   in the CNMI do not compel mediation, but the parties can do so.

18   Okay.

19          THE COURT:  Uh-huh.

20          MR. TORRES:  But there is -- there is -- and, of

21   course, there's settlement.  And by the way in Ms. -- in this

22   probate case, the -- the Administratrix has not received any

23   notice of this administrative appeal, she hasn't to date.

24   They've -- they've indicated that they have calendared it, but

25   she wasn't received any notice in filing.

1          Now, let's talk about -- so that's my -- what I was

2    going to say about what I struggle with is that all the cases

3    that we've looked at, including the -- the FTC case, it's the

4    District Court that adjudicates the probate issue, not an

5    administrative tribunal.  Because if -- if the Settlement

6    Agreement says that it's -- this administrative appeal is to be

7    consistent with due process, then we submit that Mr. Villagomez

8    never received due process and will not receive due process.

9          Why?  What is the Trustee's claim in nature?  Put

10   aside the Settlement Agreement and the administrative process,

11   put it aside.  What is it?  She's seeking a recovery action

12   under 83.19 under the statute for an overpayment.

13         Your Honor, look at the statute.  The statute says

14   about the law that you -- when you've overpaid, the

15   Administrator of the Settlement Fund now has to go now and

16   recover and it also reads against the Estate.  That's where we

17   stand on is by statute.  And, of course, as Markham discusses,

18   it's committed to the state courts.  Nothing -- nothing fancy

19   there.

20         But what happens when a probate issue is presented to

21   the Federal Court?  In every case, the Federal Court takes the

22   case, even the Tolosa case in Guam is a federal case.  In the

23   pension fund case in Carpenter's Trust, it's the Federal Court.

24   In Markham, it's the Federal Court.  It's either an independent

25   federal question or diversity.  But when it's dealing with a

1    probate action, and -- and you say the probate exception
2    doesn't apply, it's only the Federal Court that handles it, not
3    here.  So going back to the Settlement Agreement, if it is the
4    purview and the jurisdiction of this Court to not only enforce,
5    but interpret the Settlement Agreement, then the Court cannot
6    be countenance to Trustee's request to disregard Supreme Court
7    precedent that says when -- that the Federal Court, not an
8    administrative tribunal of a pension fund, is the one that
9    adjudicates the probate issue.

10            So point number one, if this Court is going to find
11   that the probate exception doesn't apply, interpretation
12   consistent with the Supreme Court holding and in Markham and
13   Marshall is that Your Honor would take this issue, and all the
14   probate issues to which the probate exception does not apply,
15   and adjudicate those here.  Not an administrative tribunal.
16   And I -- I don't want to belabor the point, but I want to make
17   sure that I'm clear.  And I believe I'm clear when I make that
18   point about jurisdiction on it.  That's my first point.

19            The Court -- that's why I apologize if my argument
20   sounds arrogant because I don't mean to be.  But the first
21   point is that it's jurisdiction.  We do not agree that parties
22   in a Settlement Agreement, class action or otherwise, can
23   disregard the Supreme Court rulings in Markham by a contract.
24   To -- to create jurisdiction in a body on a probate issue when
25   the law is that Federal Courts don't have jurisdiction unless

1   they fall within -- there's some exception.  And -- and the

2   Supreme Court ruling says so.  The other -- so now, I want to

3   go to this point.

4           THE COURT:  So let me just -- okay.  Hold on a

5   second, though.

6           MR. TORRES:  Sure.

7           THE COURT:  You -- so the Settlement Fund, okay, is

8   saying, "Look, we" -- "we are arguing that the probate

9   exception is" -- "does not apply here."  They're not seeking to

10  administer Mr. Villagomez's Estate, that is left to the purview

11  of the --

12          MR. TORRES:  Right.

13          THE COURT:  -- of the Superior Court.  They're not

14  seeking to annul the will.  Instead, they're asking to resolve

15  a -- specific issues, which required the Court to interpret and

16  enforce the Settlement Agreement.  And, you know, the Federal

17  Court -- okay.  As we looked at the Marshall case and so forth,

18  it says that the Court may exercise jurisdiction to adjudicate

19  rights and property that is subject to a state probate

20  proceeding, i.e., the -- the local Court, or the final judgment

21  does not undertake to interfere with the local court's

22  possession.  Same to the extent that the state court or the

23  local Court, Commonwealth court, is bound by the judgment to

24  recognize the right adjudicated by the Federal Court.  And the

25  Court is just citing to Marshall quoting Markham.

1   So if we're really looking at -- from what I'm

2   hearing from Ms. Torres-Ripple is they're asking that the

3   Court -- I mean, that -- they're requesting that there be an

4   adjudication of its rights under the Settlement Agreement.

5   They're asking that there's an interpretation and enforcement

6   of that  particular paragraph in the Settlement Agreement that

7   they want to be looked at here through their process.

8   MR. TORRES:  Yep.

9   THE COURT:  And they are not -- as I understand it,

10   the -- the Settlement Fund is not asking this Court to direct

11   payment of funds from the probate estate for the alleged

12   overpayment to Mr. Villagomez.  They're not doing that.  They

13   don't even know -- you know, I'm not even sure they -- well,

14   it's not clear what the amount is.  I guess Ms. Torres-Ripple

15   has to tell us that.  I guess I was a little confused, too,

16   with the amount, like you are, because they start -- we start

17   off with 45 and then they're up to a different number now.  And

18   then there's a six year -- six-year period that -- that's part

19   of the contract law in the CNMI.

20   As -- as you know, Mr. Torres, there's been no final

21   determination that an overpayment has, in fact, occurred.  Or

22   that it is the fault of anyone.  I mean, if it -- I'm assuming

23   that if it was the fault of the Retirement Fund, whatever,

24   intentional fault, negligent fault, reckless fault, there

25   could be some, you know, mitigation with regard to a

1     resolution, but there's been no final determination.  And
2     that -- that determination still must be made through the
3     process that has been spelled out in the Settlement Agreement.
4     And as memorialized in the judgment.  And in any event, you
5     know, a final determination has to be made by an arbiter,
6     whether or not this was -- any overpayment.  And if that is
7     made, let's assume that they say, Okay, there was an
8     overpayment of two hundred dollars, just for -- you know, just
9     to throw out a number, the Settlement Fund could then ask that
10    that be reduced to a judgment.  And then seek to have that
11    recognized by the Superior Court in the probate action.
12    Couldn't they do that?  I think that's kind of, you know --
13          MR. TORRES:  Well, yeah.
14          THE COURT:  -- we're -- that means that the Federal
15    Court is respecting the probate court.  They do what they
16    continue to do.  Go ahead.
17          MR. TORRES:  So -- so, Your Honor, that's -- I get
18    it.  I mean, and that's my -- the thrust of my -- one of my
19    points is that, the -- it can't -- can't do that.  By -- it
20    cannot be done by the rulings in Markham.  It's -- there's no
21    case for that proposition to have a claim in probate work
22    through the -- the Court and by Settlement Agreement,
23    adjudicated before an administrative tribunal in a court with
24    federal -- with jurisdiction.  It's always the Federal Court.
25    I don't agree, and we don't agree, because the case law doesn't

1    support that proposition.

2           That's -- that's why I'm pointing out that,

3    Your Honor, when you're going to look at the Settlement

4    Agreement, you have to interpret it as to what the law is, and

5    we say the law of Markham and others --

6           THE COURT:  Uh-huh.

7           MR. TORRES:  -- don't ever support that proposition

8    that when a -- when a -- when a pensioner has passed away, that

9    you're going to continue.  Because look at the Carpenter's

10   Trust case, the Court there did the analysis that -- and that's

11   why I'm saying, Your Honor, look at what the settlement -- the

12   Trustee is asking for.  She's asking for 56,000, that's her

13   claim.  I don't know why it can't be clear for them because

14   that's what they put into Superior Court, 56,913.77.  And what

15   are they wanting to do?  They're asking, Your Honor, to enjoin

16   her from raising any defenses.  Stay all proceedings, and it's

17   going to be all adjudicated.  What is it?  What is the

18   settlement fund's claim?  It's a claim of overpayment.  What's

19   a claim of overpayment?  56,000.  They want 56,000.  And they

20   want -- and it's never been adjudicated to finality to a

21   judgment, by the way.  And they want the -- the Administrative

22   Appeals process to say just that.  That an order from the

23   arbiter -- arbitrator will say 56,000 is what now the estate

24   owes.  And then they take that and they walk into probate court

25   and say, "Here.  We want to recover from the Administratrix and

1    the Estate, 56,000." That's a recovery action.  And the

2    analysis in the Carpenter's Trust test -- case -- trust case

3    says when you have an in rem action seeking a res, in res is an

4    in rem action, and I quote Marshall, and --and in Marshall they

5    said that an in rem is against property, as opposed to in

6    personam, an action determining the title to property and the

7    rights of the parties.  So they want to walk in and have an

8    administrative tribunal adjudicate that, finalize it, and walk

9    in.

10            Well, the Markham decision says, a court may not

11   exercise its jurisdiction to disturb or affect the possession

12   of property in the custody of the court.  It may exercise its

13   jurisdiction to adjudicate rights in such property, where the

14   final judgment does not undertake to interfere with the State

15   Court's possession, same to the extent that the State Court is

16   bound by the judgment.  There is -- under the statute, there is

17   no question that the Trustee has a right to pursue overpayment

18   under Section 839.  There's nothing to adjudicate.  There's no

19   question there.  In fact, Your Honor, when we filed the

20   petition, when we filed the petition to admit the Estate in

21   probate, we pled it.  We pled that the Administratrix in her

22   petition has received this notice of this claim.  And we don't

23   know what's the status of it, but we informed.  So there's no

24   need for the administrative tribunal to adjudicate that they

25   have a right to a claim.  The statute already gives them that.

1          So what's there to adjudicate?  The money

2     entitlement.  And why is that a problem?  Because if you allow

3     it, then you're going to have a conflicting judgment because

4     you have secure creditors, such as CitiTrust Bank, and you

5     have funds in there and it's subject to a mortgage.  And if

6     they take away -- if the -- if the Trustee comes in and says,

7     "Oh, now we have an administrative decision and it says we get

8     56,000 pursuant to the agreement."  And here, "pay us."  And

9     the Administratrix cannot pay the CitiTrust Bank, who's a

10    secure creditor, and then it defaults on that and the property

11    is foreclosed upon, that's absolutely disturbing and intruding

12    on the probate process.

13          And that's where the Court in -- in Markham says when

14    you're going to be doing that and you're pursuing citing

15    Carpenter's, and even the Tolosa case, which is in the District

16    Court of Guam,  the analysis is -- is right there.  And they

17    discuss why the courts -- the Federal Court will not do that

18    because it's a claim for money.  And they wanted to quiet

19    title, making her the sole heir in Tolosa, that would disturb

20    the possession of real property.  And so using the Marshall

21    analysis, distinguishing that in Marshall it was an in

22    personam action.  But in Tolosa, they were looking to reach a

23    res, property in the custody of the court.  When you're doing

24    that, that's what the Trustee is trying to do.

25          And so, Your Honor, it's a thinking like, wait a

1   minute, you know, what's the harm in this Administrative

2   process?  I mean, there's mediation.  Well, if there's

3   mediation, it's not resolved.  An arbitrator is the final

4   arbiter.  And you've already heard my argument that that cannot

5   be under the holdings of Marshall about this Court having

6   jurisdiction.  But in addition to that, the nature of the

7   Settlement Fund's claim is an action for recovery of property,

8   overpayment.  Just like it was in the Carpenter's Trust.  That

9   they never paid.  That one was a failure to contribute.  Here

10   it's an overpayment, but the analysis is the same.  When --

11   when Mr. Bartrum, I think, like Mr. Villagomez, was no more,

12   and because of the properties committed to probate proceedings

13   that in rem pursuit for arrest and recovery, you go to court

14   because the probate exception applies, and, Your Honor, this

15   is -- and quite -- to be quite honest, I mean, I've never dealt

16   with a probate exception.  I didn't know about it until

17   Your Honor's order pointed it out to us.  And I submit that the

18   Trustee never knew about that either because she never asserted

19   it.  But when we look at the case law, the Markham is an

20   interesting decision, but it's a doctrine --

21         THE COURT:  Uh-huh.

22         MR. TORRES:  -- based on abstention and the younger

23   cases.  It's a doctrine based on abstention, where you don't

24   have custodial alleges of -- of properties between two courts

25   fighting over property.  And it's a doctrine of when it's all

committed and -- it doesn't preclude courts of equity by the
Federal Courts in favor of creditors like legatees and heirs to
establish their claims.

Again, the Trustee and the Settlement Fund's claim is
already established in probate court. It's timely here. We're
not disputing timeliness like Hofschneider and Benavente. We
aren't contesting that. We've pled it that there is a claim.
The statute says they're entitled to pursue recovery, that's
fine. What we asked when we -- when we requested the status
conference is, can we get some particulars of what your theory
of your recovery so that we can respond on whether we're going
to allow or disallow the claim? Or what's -- how do you come
at this amount because it was 46,000 in nine -- in 2012. Now
it's 56,000. And why didn't you pursue it in -- and this is
the question we ask: Why didn't -- why didn't you give him a
hearing in 2015? Why'd you wait until he died? And we don't
know what else Mr. Villagomez could have brought up. But now
the Administratrix is trying to get some facts. And so you
have the danger of conflicting decisions, and -- and that's
what the Trustee is asking.

THE COURT: Yeah, I think -- I think -- well, so
Mr. -- Mr. Torres, I mean, you know, your argument has some
appeal with regard to like why was there this gap? And -- and
what exactly is the -- what exactly is the Trustee  requesting
as overpayment? What is it? I guess I'm not clear on that

1    either.  But what I am clear it is that prior to the creation

2    of the Settlement Fund, the Retirement Fund had at least

3    initially determined that they believed Mr. Villagomez had been

4    overpaid.  And Mr. Villagomez wanted -- he said I want to

5    appeal that decision.

6         And you're right, there was no appellate process

7    given to him necessarily, just because they weren't ready,

8    there was a lot of things going back and forth.  I mean, it was

9    a pretty contentious case, as you know.  Mr. Torres, you know

10   that that's -- it was a very contentious case.  And -- and so,

11   we see that he filed the appeal decision.  The Settlement Fund

12   was created, the assets were transferred and the Retirement

13   Fund assets were transferred and assigned to the Settlement

14   Fund.  And any overpayment to Mr. Villagomez by the Retirement

15   Fund now is considered a receivable, which is an asset that was

16   subsequently transferred and assigned to the Settlement Fund,

17   right.  So there's no dispute that, as far as the Court can

18   see, that there's no dispute that Mr. Villagomez did not opt

19   out of being included in the settlement class.  So he agreed to

20   be bond by the Administrative Appeals process to resolve the

21   claimed overpayment.  When he passed away, his rights had

22   passed to his Estate.  And the Settlement Agreement, as we've

23   already talked about, did provide that the terms of the

24   agreement would apply to his heirs, successors, and assigns.

25   I've already said that the judgment did specify this.

1          Now, so just as Mr. Villagomez was required to comply

2    with the appeals process, so would have -- so would his

3    daughter, the Administratrix, be bound to proceed to resolve

4    the dispute of the claimed overpayment.

5          Now, I understand what you're saying, like, look, you

6    know, may -- maybe -- maybe it should be that -- maybe it

7    should be that these issues of -- of laches the defenses,

8    unfairness, and so forth, it definitely could be brought up in

9    the administrative process.  Your client, Ms. Villagomez, can

10   say, "Look, why was this" -- "why did this take so long to get

11   to" -- "to my dad and now it's come to me?"  They can just do

12   that.  I mean, there's nothing to prevent that.  And -- and so,

13   the -- the only issue really is can -- should the Court --

14   well, first of all, you know, the relief that they're seeking

15   is they want the Court to declare -- they, meaning the

16   Trustee -- want the Court to declare that this Court has

17   exclusive jurisdiction to enforce and interpret the Settlement

18   Agreement.  I would agree with that.  But I will not agree that

19   I should stay the probate action in the Superior Court of the

20   CNMI since the probate exception would bar such an act by the

21   Court.  I do believe that -- and I -- I do want to give Ms.

22   Torres-Ripple a -- a chance to respond to your arguments.

23          I don't think it's -- I don't think it's -- well,

24   I -- I don't think it would be impossible or disallowable or in

25   any way forbidden by the Trustee to have you make these very

1    emotional and some logical -- you know, logical arguments on

2    behalf of your client at the appeals process.

3            But thank you for -- for your argument, Mr. Torres.

4            MR. TORRES:  Your Honor, may I just finish a couple

5    of points that I wanted to --

6            THE COURT:  Sure.  Sure.

7            MR. TORRES:  -- I wanted to do.

8            THE COURT:  Go ahead.

9            MR. TORRES:  Your Honor, the one thing is that this

10   kind of, I don't know, I'm not sure what the -- you know, the

11   Court's asking.  I'm not sure what the Trustee is wanting in

12   its claim.  I just want to be clear that the Trustee in her --

13   her filing with the Superior Court is claiming money.  They are

14   wanting an adjudication that they are entitled to 56,913.77

15   from the Estate.  And -- and -- but now they want that claim,

16   they want that determination to be made not by Superior Court,

17   not by Your Honor, but in the administrative process.  And

18   that's -- that's an important -- really important point to

19   drive home, because there's no -- there's no vagueness about

20   the Trustee's intentions.  And she's wanting that forum in

21   order to get that final ruling and -- and then take that final

22   ruling, if she prevails, and then walk into probate court and

23   enforce it, that's exactly what she's going to do.  It's not an

24   adjudication of does -- what are her rights or what are her --

25   you know, what authority does she have, it's not in the

administrative tribunal.  There's no -- there's no issue of

that.  There's no issue of that at all either on the Settlement

Agreement or on the statute, but they're going to win on the

fact that they have rights to recovery of overpayment.  So what

is going to be the end result?  The end result is going to be a

recovery order.  And that's why the probate exception stands

and the analysis in the Carpenter's Pension Trust, as well as

Balestra, says that when you're going that way, you are moving

into the intruding into the probate courts and you do have the

danger of conflicting results.  And that's what the research

shows us.  That's what the case law shows us.  And the courts

do struggle with where's the line between, you know, intrusion

and necessity.  Well, I submit that the cases say that when

it's tort actions or in personam, things like that, then, yeah,

you -- you -- the probate exception applies and -- but,

otherwise --

        THE COURT:  Well, let me just say -- but, your

argument that -- that the Trustee is going to walk over to

probate court and tell the probate judge, "Hey, you got to do

this."  They're not going to do that.  They're going to say,

"Listen, we have a judgment here.  We" -- "we're going to ask

you to recognize it."  The probate court can say whatever they

want to say.  Right?  They can review it.

        MR. TORRES:  Right, but what they're asking --

        THE COURT:  And make an --

```
 1              MR. TORRES:  Sorry, Your Honor, but it's not the --
 2    it's not the probate court that is being enjoined in this
 3    motion, it the Administratrix.  She's going to be muzzled,
 4    restrained and confined from saying anything by Your Honor's
 5    order by virtue of the Settlement Agreement and -- and that's
 6    the problem is that she can't say anything because she -- she
 7    can't say --
 8              THE COURT:  But that's not true, though.  Mr. --
 9    Mr. Torres, that's not true.  I mean, I should ask the -- why
10    don't we ask the -- the Counsel -- Counselor how do they -- how
11    do they proceed with their mediation.  Why don't we ask them.
12    I'm assuming it's very informal.  Can you tell us that, Ms. --
13              MS. TORRES-RIPPLE:  For --
14              THE COURT:  -- Ms. Torres-Ripple?
15              MR. TORRES:  For mediation in -- in the
16    administrative -- the Settlement Fund?
17              THE COURT:  Yeah.
18              MS. TORRES-RIPPLE:  Yes, Your Honor, to describe the
19    mediation process.  Well, first of all --
20              THE COURT:  Well, I mean, just, like, for example,
21    like if somebody -- whoever just walked in, you said you
22    settled a few --
23              MS. TORRES-RIPPLE:  Uh-huh.
24              THE COURT:  -- they walked in, they've talked --
25    spoken to the mediator, Collins, how has it worked out?  Has it
```

 1   been such that the Claimant is muzzled?

 2           MS. TORRES-RIPPLE:  No, we -- it's actually been

 3   working out pretty well.  We're very grateful to this Court for

 4   appointing Judge Collins, and -- and we've managed to settle a

 5   couple of cases, including some very difficult ones.  And so

 6   it's been going well.

 7           THE COURT:  So tell us the process.

 8           MS. TORRES-RIPPLE:  The pro- --

 9           THE COURT:  So tell us the process so that Mr. --

10   because Mr. Torres feels very strongly that his client will be

11   muzzled, so he wants to be protective of her.

12           So, go ahead, tell us.

13           MS. TORRES-RIPPLE:  Your Honor, that is not the case.

14   And, in fact, Mr. Torres was involved in one of our mediations,

15   so he is aware of the process.  The process is that we go

16   through mandatory mediation.  We talk informally between the

17   parties.  And we ensure that all members, all individuals who

18   have decision-making authority are present, so that's key.  And

19   from that point, we go back and forth.  We have breakout rooms

20   with -- you know, Judge Collins has breakout rooms.  A breakout

21   room with the Settlement Fund and another breakout room with

22   the Appellant, and we go -- we go from there.

23           And so far, like I've said, it has been working well.

24           MR. TORRES:  So, Your Honor, that's not what I'm

25   talking about.  I'm talking about --

1          THE COURT:  Oh.

2          MR. TORRES:  -- in probate --

3          THE COURT:  I thought that --

4          MR. TORRES:  No, I'm talking about when the, quote,

5     "final decision or order" if there is no settlement in

6     mediation and it goes to  final arbitrator decision, the

7     arbitrators --

8          THE COURT:  Right.

9          MR. TORRES:  So that's what I'm talking about, but if

10    you -- you just said it at the beginning of -- Your Honor just

11    said it at the beginning that the Trustee seeks an order from

12    enjoining the Administratrix from asserting any defenses.

13    That's in probate court, too, so -- among other things.

14         So the person that's muzzled and where, is the

15    Administratrix in probate court, because despite the fact that

16    she could assert any defenses here against the Trustee, as a

17    result of that process, she's -- she's the one that is subject

18    to the jurisdiction of the Court and she has to just be quiet

19    and the ruling is the ruling, and she can't -- she would be

20    placed in a conflict between who does she answer to.  Well,

21    she's confined with one ruling of an arbitrator from the

22    administrative tribunal and the other side to the judge where

23    you have creditors and heirs to whom she owes a fiduciary duty

24    as to their claims.

25         And then she -- let's just assume for the

 1   hypothetical that the arbitrator rules 56,000 is owed by the

 2   Estate to the Settlement Fund.  The Administrator can't say

 3   anything, can't raise any defenses.  She's done.  She has to

 4   walk over there and just sit quietly.  And then on the other

 5   side, what about the creditors and what about the heirs, she

 6   can't assert any defenses in probate court.  And then you have

 7   a -- she's confined.  That's what I'm saying is she's muzzled.

 8   And that's the problem that has been discussed.

 9           THE COURT:  Oh.

10           MR. TORRES:  And -- and it sounds -- you know -- and

11   I know Your Honor is like, okay, we have the Settlement

12   Agreement and it sounds so, you know, kind of workable, but

13   that's not -- that's not this case in the probate.  There are

14   legitimate disputes that the Administratrix can raise and --

15   and challenge:  Breach of contract.

16           THE COURT:  But she -- but she can raise, but --

17   yeah, but I -- it's clear she can reach -- she can -- she can

18   raise those issues, though, with the settlement judge; whatever

19   she has.  If she feels that the fifty -- what -- let me -- let

20   me just clarify.

21           Ms. Torres-Ripple, can you -- can you tell us exactly

22   what you are seeking for purposes of this Administratrix?

23   Because I think me and Mr. Torres are confused about that.

24           What's the amount?

25           MS. TORRES-RIPPLE:  The amount is 56,000 -- one

 1    moment.

 2              MR. TORRES:  913.

 3              MS. TORRES-RIPPLE:  56 --

 4              THE COURT:  Okay.

 5              MS. TORRES-RIPPLE:  -- 913.77.

 6              THE COURT:  Okay.  And from what period of time is

 7    that, again?  Can you just clarify that, because you -- you

 8    talked about a six-year period that you felt was going to be

 9    shaved off; is that correct?

10              MS. TORRES-RIPPLE:  Yeah, so it's six years from the

11    date of the adverse decision letter, so it's May 6, 2012,

12    through May 15, 2021.

13              THE COURT:  2012, '13, '14, '15, '16, '17, '18, '19,

14    '20, '21.  Okay.  I'm sorry.  May what?  Okay, May 6th, 2012,

15    to May 6th, 2021?

16              MS. TORRES-RIPPLE:  To May 15, 2021.  We weren't

17    informed on time, so if we aren't informed --

18              THE COURT:  Okay.

19              MS. TORRES-RIPPLE:  -- on time before the 15th pay

20    period kicks in, it -- it's -- it includes that.

21              MR. TORRES:  I think it means that --

22              THE COURT:  Okay.  So --

23              MR. TORRES:  -- you reach back six years from May

24    10th, 2021.

25              THE COURT:  Oh, I see.

 1          MS. TORRES-RIPPLE:  No, Your Honor, that's incorrect.

 2          THE COURT:  All right.

 3          MS. TORRES-RIPPLE:  We reach -- it's six years from

 4   the date of the adverse decision letter.  And so the date of

 5   the adverse --

 6          THE COURT:  Well, that was in twenty --

 7          MS. TORRES-RIPPLE:  -- letter is --

 8          THE COURT:  -- 2012.

 9          MS. TORRES-RIPPLE:  Right.

10          THE COURT:  Yeah, 2012, right?

11          MS. TORRES-RIPPLE:  Yeah.  Correct.

12          THE COURT:  I thought the adverse decision letter

13   was -- was it April 30th, 2012?

14          MS. TORRES-RIPPLE:  No, it's May 7, 2012.

15          THE COURT:  Oh, May 7th, 2012.  Okay.  That's right.

16   Okay.  Well, I've got some dates here, maybe I'm just

17   looking -- I saw an April -- I saw a letter of overpayment from

18   the Retirement Fund -- oh, May 7th, 2012.  Excuse me.  You said

19   May 7th, right?

20          MS. TORRES-RIPPLE:  Yes.  Correct.

21          THE COURT:  Yeah, that's right.  May 7th, 2012, the

22   Retirement Fund sent Mr. Villagomez a letter of overpayment,

23   and adjustment of benefits, a letter of overpayment in the

24   amount of 45,680 as of April 30th, 2012.

25          All right.  So when did you reach back?  What did you

1    say, from which then?  You went from May 7th, 2012, to what.

2              MS. TORRES-RIPPLE:  May 7th, 2006, through May 15 of

3    2021.

4              MR. TORRES:  I don't -- and this is not --

5              THE COURT:  May 7th --

6              MR. TORRES:  I'm sorry.

7              THE COURT:  Go ahead.  Go ahead.  What was that?

8              MR. TORRES:  We just don't know.  These are not facts

9    that are known to the Administratrix.  We don't know what

10   they're doing.

11             THE COURT:  Uh-huh.  Do you guys sit down and talk to

12   each other?

13             MR. TORRES:  I'm sorry?

14             MS. TORRES-RIPPLE:  I'm sorry?

15             THE COURT:  I mean, that might help.  Do you guys all

16   sit down and talk to each other?

17             MS. TORRES-RIPPLE:  We haven't yet.  We've tried to

18   inform the Administratrix actually at the status conference

19   that the pre-mediation conference -- because, normally we start

20   with a pre-mediation conference even before the mediation

21   conference to kind of --

22             THE COURT:  Uh-huh.

23             MS. TORRES-RIPPLE:  -- familiarize everybody with the

24   process.  And so --

25             MR. TORRES:  Well --

1              MS. TORRES-RIPPLE:  -- at the status conference was

2      when the Administratrix objected to going forward with that

3      process and that's why we are here today, to seek enforcement

4      of Section 10.0(k).

5              MR. TORRES:  So, Your Honor, you asked if we talked

6      to each other.

7              THE COURT:  Okay.

8              MR. TORRES:  That's why the Administratrix asked for

9      the -- you know, the status conference with those issues, and

10     they never talked to us.  They never responded to clarify the

11     points.

12             THE COURT:  Well, so you asked for a status

13     conference, oh, in the probate court?

14             MR. TORRES:  Right.

15             THE COURT:  Is that what you're talking about?

16             MR. TORRES:  Yes, Your Honor.

17             THE COURT:  Oh, okay.  In the probate court.

18             MR. TORRES:  Yeah.

19             THE COURT:  Okay.

20             MR. TORRES:  That's an exhibit.

21             THE COURT:  And I --

22             MR. TORRES:  So --

23             THE COURT:  All right.  Well, is there hope to -- to

24     speak to one another?  I mean, you're both in the probate court

25     with Judge Camacho and you're in the Federal Court --

1    MR. TORRES:  Yeah.

2    THE COURT:  -- with Judge Tydingco-Gatewood --

3    MR. TORRES:  So --

4    THE COURT:  -- and I know -- I know it -- let me

5    just -- it doesn't -- it doesn't escape me, and I'm pretty sure

6    it doesn't escape the Trustee, that this is an incredibly large

7    amount of money that's being alleged here for overpayment.  And

8    I'm sure it's causing some -- some stress upon the family.

9         So to the extent that we can relieve the stress, I'm

10   just wondering -- I mean, I can issue a decision.  I do -- you

11   know, this is an important case, Mr. Torres and

12   Ms. Torres-Ripple, but I'm just wondering if -- if the parties

13   can just even come together and, perhaps, like reduce the

14   stress and maybe there could be matters that you have -- that

15   you know personally Mr. -- and directly, Mr. Torres, on behalf

16   of Administratrix and her father and family that -- that should

17   be related to -- to the Trustee.

18   MR. TORRES:  So, Your Honor, of course, we -- we --

19   you know, I've Settlement -- Retirement Fund cases from 2006.

20   I mean, we've dealt with the settle -- I've dealt with the

21   Settlement Fund on various cases -- or the Retirement Fund.

22   And, yeah, it is -- it is a -- difficult, they're -- the

23   Surviving spouse, Ms. Patricia Villagomez, just passed away

24   last fall.

25   THE COURT:  Right.

1          MR. TORRES:  After -- and so -- but -- but, yeah, I

2     mean, if Your Honor is suggesting that the parties meet and

3     confer to see if it can be resolved, our answer for the

4     Administratrix is, of course, we have to do that.  We should

5     always do that.  And we will not say no.  We will say yes.  We

6     will -- take care of Counsel on that.  But it's -- you know --

7          THE COURT:  Yeah, I think -- I think it's a good idea

8     because, you know, your -- you had to run into probate court,

9     Mr. Torres, you felt like you did.  And the Trustee felt like

10     on behalf of the Fund, she needed to also run to federal court.

11     But to the extent that the two of you could come together,

12     because there is this probate exception, and the question is,

13     does it apply.  And -- and, you know, you've seen it in -- in

14     the Marshall v. Marshall case and the other cases.  They're

15     very -- very -- they get very emotional and very high -- a lot

16     of high intensity in terms of feelings.  But I might -- I would

17     suggest that -- and thank you, Mr. Torres, I know you're always

18     a fine lawyer and a gentleman and very civil.  And I know that

19     Ms. Torres-Ripple and Ms. Tang also is a fine lawyer.  So I

20     would -- I would suggest that the parties meet and confer, you

21     know, and try to do that no later than next week Friday.

22          I won't issue my decision until after that, if I find

23     that the parties can't resolve, but -- resolve the matter, but

24     at least -- at least speak to each other, and -- and speak to

25     each other about how you -- how you truly feel.  And maybe you

1    may have legitimate arguments that -- that can be made.  And if

2    you want to meet with the Judge Collins on an informal basis,

3    you can do that as well.

4            I'm pretty sure that he's amendable to that.

5            Would that be acceptable to you, Mr. Torres?

6            MR. TORRES:  So, Your Honor, the -- what's acceptable

7    is we're absolutely willing to confer with the Trustee on -- on

8    resolution.

9            THE COURT:  Okay.  Okay.

10           MR. TORRES:  I'm -- I'm -- I need to preserve, you

11   know, our rights in terms of not going into mediation, if we're

12   going to capitulate to that, but we've done one --

13           THE COURT:  Right.

14           MR. TORRES:  -- as Ms. Torres-Ripple indicated with

15   Judge Collin [sic] and he's -- he is a good mediator and we --

16   it was effective, we resolved it and so -- but, if

17   Your Honor -- we take your suggestion, Your Honor, we will for

18   the Administratrix meet and confer with the Trustee to see if

19   we can work this out.

20           THE COURT:  Yes.

21           MR. TORRES:  And if we can't, and we may need a

22   mediator if Judge Collins would be willing to do it, you know

23   as part of our outside of any court dispute resolution, without

24   binding -- you know, confining anyone, then, yes, we're good.

25   We're good with that too.

1          THE COURT:  Okay.  Well, I don't I -- okay, I -- that

2    seems reasonable to me.  I mean, I think -- you know, we

3    haven't gone done this path, Mr. Torres, on this probate

4    exception and how it intersects with the settlement fund, so it

5    is -- you know, it's probably a case of first impression here

6    for us, as well as -- as far I can see, but I think -- may I

7    ask Ms. Torres-Ripple and the Trustee, would that be amendable

8    to both of you?

9          MS. TORRES-RIPPLE:  Your Honor, with respect to the

10   meeting and conferring, yes, it is.  However, I would like to

11   state that we are not waiving and we are preserving our right

12   to -- to -- to adjudicate the claim of overpayment in --

13   through the Administrative Appeals process under Section

14   10.0(k), which, again, you know, this -- this Court has

15   approved.

16         THE COURT:  Right.  Okay.  And may I ask the Trustee,

17   Ms. Tang --

18         MS. TANG:  Yes.

19         THE COURT:  -- would that be acceptable to you?

20         MS. TANG:  Thank you, Your Honor, I think that we're

21   always open to settlement.  We have worked through some very

22   difficult cases with Judge Collins, he's an excellent mediator.

23   I think if parties can get together to mediate under whatever

24   circumstances, it's always a good thing, and so --

25         THE COURT:  Okay.

1          MS. TANG:  -- we're okay with that.

2          THE COURT:  Okay.  Thank you, Ms. Tang.

3          MS. TORRES-RIPPLE:  Your Honor, may I just seek to --

4  to clarification, though?

5          THE COURT:  Yes, Ms. --

6          MS. TORRES-RIPPLE:  Will the administrative appeal

7  rules apply?

8          MR. TORRES:  I'm sorry?

9          MS. TORRES-RIPPLE:  Will the administrative appeal

10  rules apply to the --

11          THE COURT:  Well, why don't I --

12          MR. TORRES:  That was my point, Your Honor.

13  That's -- that's why we're -- you know, either we -- we put our

14  swords down or we pick them up.  And so the Admin -- the

15  Trustee is saying we're going to preserve it, and will we --

16  will the Administrative Appeals rules apply?  Our answer to

17  that is no, we're not agreeing to that.  And so that's why I

18  just said outside of any court jurisdiction or mediation.

19          So either they want to talk about settlement, and we

20  will.  But if they want to start saying under -- under

21  Administrative Appeals rules, then our answer is no.  Then,

22  we'll just ask the Court to rule.

23          THE COURT:  Yeah, I think it becomes -- yeah --

24          MS. TANG:  Your Honor, may I be heard?

25          THE COURT:  So rather -- yes, go ahead, Ms. Tang.  Go

 1    ahead.

 2              MS. TANG:  Your Honor, may I suggest that the parties

 3    agree that to maintain the status quo pending the issuance of

 4    your decision if we decide to mediate, arbitrate, the status

 5    quo is maintained today, regardless of what the parties do

 6    between the time that -- today and the time that you issue your

 7    decision; does that help?

 8              THE COURT:  I think that's fair.  Yeah, does that

 9    help, Mr. Torres?  I think that's fair.

10              In other words -- in other words, I'm hearing the

11    Trustee say, Look, status quo is this:  Everybody's rights are

12    continually -- to continue to be preserved, you know, forever,

13    if you will, and -- but between the time of today and the

14    time -- like, say a week.  Let's say a week, or, if you need

15    two weeks; you give me two weeks.  Whatever you do within the

16    two weeks, that's just between the two of you-all.

17              How's that?  Is what you're saying?

18              MS. TANG:  That's what I'm saying.

19              THE COURT:  And you guys --

20              MR. TORRES:  So --

21              THE COURT:  That's right, I understand that.

22              MR. TORRES:  So I suggest, Your Honor, that the Court

23    stay ruling on -- on the motion to allow --

24              THE COURT:  I will do that.

25              MR. TORRES:  -- until at least until -- until

1    February 11th.  To allow the parties to resolve it.  And if

2    failing resolution, we'll inform the Court, and then the Court

3    can make a decision.

4          THE COURT:  All right.  I can issue my decision after

5    that.  Right.  I'll have my decision ready.

6          MS. TANG:  Your Honor, we do have briefing in the

7    probate court that has not been -- that is due on Monday, I

8    think.

9          MS. TORRES-RIPPLE:  Right.  Exactly.

10         MS. TANG:  And, Your Honor, I think that if the

11   parties will stipulate to kick that over, and -- so there won't

12   be -- we're going to move to do the same thing here and if they

13   issue a decision before you do, then we would have this

14   strange, you know, competing decisions.  And I want to avoid

15   that, and I think that was why we came ex parte.

16         If Mr. Torres will agree on the record, that they

17   will stipulate to -- to -- to moving that back, I think that

18   would work for all of us and we don't have briefing on the same

19   issue in a different court and potentially a competing

20   decision while yours is pending.

21         THE COURT:  Mr. Torres?

22         MR. TORRES:  No, Your Honor.  I'm not going to agree

23   to that.  Judge Camacho was painfully clear in this order about

24   the briefing of the parties, so I know he will -- I'd like to

25   see if either we resolve this or not.

1          THE COURT:  I mean, I could issue my decision

2     shortly.  That's -- but I wanted to give the parties an

3     opportunity to try to resolve this so that both parties don't

4     have to duke this particular issue out either in the federal

5     court or in the probate court.

6          And, you know, there -- and -- and, as you may know,

7     Mr. Torres, I think you would, I know Ms. Tang knows, that

8     previously when there was an issue of, you know, the Retirement

9     Fund, the case was in the local court previously, then it was

10    removed to the district court and so I did have to work with

11    Judge Govendo and the other judges to -- you know, we just

12    tried to -- we tried to be very respectful of each other's

13    jurisdiction.  And -- and I still am very respectful of the

14    probate court jurisdiction of the Judge Camacho, the local

15    court, but I -- I guess -- well, so are we at a standstill; is

16    that what we're saying?

17          MR. TORRES:  No, I mean...

18          MS. TANG:  So, Your Honor, if we don't have a -- I'm

19    sorry, if the briefing on Monday is a briefing on the

20    jurisdictional issue is the same issues that we are discussing

21    today --

22          THE COURT:  Uh-huh.

23          MS. TANG:  -- if I may, Your Honor, we commit to

24    mediating and -- and, you know, I -- I think at this point we

25    request that you issue your decision.

1          The Settlement Fund will commit to working with the

2     Administratrix to try to resolve some of these issues, but, you

3     know, I think we've tried to accommodate their concerns about

4     waiver.  And if they're not willing to -- to address the -- or

5     stipulate to a delayed briefing on the probate matter, then we

6     don't have a choice.  I don't see how we can try do that.  And

7     I understand your effort to try to get the parties to come

8     together, but I just don't see how we -- we're just not going

9     to jeopardize a -- have a situation where we have, you know,

10     this Court's decision, which can probably come out today or

11     tomorrow, when, you know, we end up briefing the same thing

12     next week and he issues it that afternoon.  And then we get

13     these competing decisions, and it just makes the issue much

14     more complicated than it needs to be.

15          THE COURT:  Well, let me -- Mr. Torres, you want to

16     address that then?

17          MR. TORRES:  Yeah.  Yes, Your Honor.  I mean, it's as

18     if somehow the Administratrix and me are being difficult in

19     this process.  I mean, we have set it out in the probate court

20     the issues.  And so the Trustee runs over to -- to this court

21     and seeks this motion without even trying to discuss with us

22     about resolution.  And now when we're talking about resolution

23     and say give it a week, the briefing schedule is moving

24     forward.  And Your Honor is going to issue a decision.  And

25     either we resolve it in a week --

1          THE COURT:  Well, no.

2          MR. TORRES:  -- and then if it's --

3          THE COURT:  Okay.  But I --

4          MR. TORRES:  If --

5          THE COURT:  But my point is:  Maybe Judge -- maybe

6    Judge Camacho and I could just like be at a standstill for a

7    week on everything.  I could be in standstill for issuing this

8    decision -- or at least to give you time to talk about it, the

9    both of -- both parties.  And Judge Camacho can be at a

10   standstill on any briefing or any further orders or hearings.

11   We would take -- I would take no action and he would take no

12   action for -- how -- one week, if that's what it takes.

13          I mean --

14          MR. TORRES:  Well --

15          THE COURT:  -- I think that's fair because nobody's

16   going to get hurt.

17          MR. TORRES:  We can -- the parties are going to go

18   into direct settlement discussions.  We can have settlement

19   discussions tomorrow afternoon, Saturday.  And if we don't

20   reach a resolution, we're just going to inform, Your Honor, you

21   know, make -- render your decision and the briefing in Superior

22   Court goes.  There's no need to wait a week, the issue's --

23          THE COURT:  We can do that too.

24          MR. TORRES:  -- is not complicated.

25          THE COURT:  Yeah.  You could do that, too.  I mean,

1    what is today, Thursday?  I mean, I guess, you can do that.  I

2    guess -- I mean, I don't know how -- okay.

3           So, therefore -- so is that how you want -- that's

4    your -- that's your final -- final statement there Mr. -- final

5    offer, Mr. Torres?

6           MR. TORRES:  Yeah, my offer is let's have a

7    settlement discussion tomorrow or Saturday and let's put our

8    pencils to work if they want to settle and we do.

9           THE COURT:  Okay.  And if you're not able to settle,

10    then the Court -- you know, you let me know.  They're --

11    they're brief is due by Monday, so either the Court -- once you

12    guys tell me, I'll have my order ready to issue out --

13           MR. TORRES:  Okay.

14           THE COURT:  -- let me just say that.  But, I will --

15    but I want to just give you -- let me just tell you this, and I

16    think I've already alluded to this, and I -- I want to be fair

17    to Counsels.  I -- I really think based on -- based on what has

18    been said, and, you know, like I said, the amount is extremely

19    high.  The -- I think it would be a good -- good thing if the

20    parties do try to settlement.  I do.

21           I mean, you have the family here.  They're grieving

22    and they're still -- they're coming to Court, that's not -- not

23    a good thing.

24           Nobody wants -- everybody hates to go to probate

25    court unless it's a happy time, but that's -- that would be

1    my -- my -- my, you know, position.

2          But I've -- it's -- I'm inclined to say that this

3    Court does have exclusive jurisdiction to interpret and enforce

4    the Settlement Agreement.  And I'm inclined to deny the request

5    to stay the probate action in Superior Court of the CNMI, since

6    the probate exception would bar such an action by the Court.

7          And I'm inclined to order the Administratrix -- I'm

8    not saying I'm going to do it, but this is what I'm inclined to

9    do based on the arguments heard today and the case law I've

10   read, I'm inclined to order the Administratrix to proceed with

11   the appeals process, including mandatory mediation and to

12   enjoin the Administratrix from taking any action in the probate

13   court that seeks to challenge the Settlement Fund's claim until

14   such time as the Administrative Appeals process has been

15   exhausted.  Who's to say -- and I'm not saying that -- who's to

16   say that the Administrative Appeals process could come down and

17   say, "Guess what?  There has been zero over-time payments that

18   should be ordered.  There will be" -- "for whatever reason," I

19   don't know.

20       I don't know, because, honestly, I'm not intimately

21   involved in the settlement.  I don't know what all the issues

22   are.  And -- and, clearly, clearly, the Settle- -- the

23   Retirement Fund, you know, they did have, I remember

24   Ms. Pangelinan, all those others, who came before, they said

25   there was problems with keeping notes and keeping files and

1    trying to keep up with all of the -- you know, the amounts of

2    monies that went in and out.  I mean, I saw that.  We heard

3    that.  And so we -- and they worked very hard, the Retirement

4    Fund and the Settlement Fund worked very hard to try to get all

5    of that resolved and cleaned up.  To the extent that they did,

6    I mean, here we are right now, we are today and we're trying to

7    resolve it and there's not -- there's just a few cases left,

8    but these are important cases.  And I understand that,

9    Mr. Torres, for your client, it's very important to her, and

10   it's also important to the Settlement Fund.

11       So that -- let me just say that's what I'm inclined to do.

12   I'm going to give the parties -- today is Thursday,

13   February 3rd, and so, you know, you guys have until Sunday to

14   figure out if you -- if you can try to resolve it.  And if you

15   both want -- if you both want to resolve it, I'm pretty sure

16   you will.  If you're unable to, then that's just the way the

17   ball bounces, but that's kind of where I'm going.  Okay.

18               MR. TORRES:  All right.  Thank you, Your Honor.

19               THE COURT:  Thank you, Mr. Torres.

20               Thank you, Ms. Torres-Ripple and Ms. Tang.

21               Take care.

22               MS. TANG:  Thank you, Your Honor.

23               MS. TORRES-RIPPLE:  Thank you.

24               THE COURT:  You're welcome.

25       (The proceedings concluded at 3:09 p.m.)

1                                    CERTIFICATE

2

3          I, HEIDI M. DOOGAN, Official Court Reporter, in the United

4     States District Court for the Northern Mariana Islands, hereby

5     certify that pursuant to Section 753, Title 28, United States

6     Code, the foregoing is a true and correct transcript of the

7     stenographically-reported proceedings held in the

8     above-entitled matter and that the transcript page format is in

9     conformance with the regulations of the Judicial Conference of

10    the United States.

11

12    Date:  March 12, 2022

13

14

15                                 /s/ Heidi M. Doogan

16                                 Heidi M. Doogan, RPR
                                   U.S. Court Reporter
17

18

19

20

21

22

23

24

25