**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

F I L E D
Clerk
District Court
DEC 10 2024
for the Northern Mariana Islands
By_____
(Deputy Clerk)

| | |
|---|---|
| BETTY JOHNSON, on behalf of herself and as a representative of a class of similarly situated persons, | No. 23-16074 |
| *Plaintiff*, | D.C. No. 1:09-cv-00023 |
| and | |
| ROSA A. CAMACHO, Retiree and Member of the Settlement Class, | ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS |
| *Plaintiff-Appellant*, | |
| v. | |
| RALPH DLG. TORRES, Governor of the Commonwealth of the Northern Mariana Islands, | |
| *Defendant*, | |
| and | |
| NORTHERN MARIANA ISLANDS SETTLEMENT FUND, | |
| *Defendant-Appellee*. | |

Case 1:09-cv-00023 Document 875 Filed 12/10/24 Page 2 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 2 of 26

2 CAMACHO V. NMI SETTLEMENT FUND

Filed December 9, 2024

Before: Mary H. Murguia, Chief Judge, and Susan P. Graber and Salvador Mendoza, Jr., Circuit Judges.

## SUMMARY[*]

### Certification Order/Commonwealth of the Northern Mariana Islands

The panel certified the following question to the Supreme Court of the Commonwealth of the Northern Mariana Islands:

> Did section 8334(e) of the Northern Mariana Islands Retirement Fund Act of 1988, 1989 N. Mar. I. Pub. L. 6-17, grant Class II members of the Northern Mariana Islands Retirement Fund, who were already employed by the Commonwealth when the Act took effect, an accrued cost-of-living-increase benefit that may not be diminished or impaired under the terms of Article III, section 20(a) of the Commonwealth Constitution?

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Case: 1:09-cv-00023    Document 875    Filed 12/10/24    Page 3 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 3 of 26

CAMACHO V. NMI SETTLEMENT FUND      3

## ORDER

In 1980, the Commonwealth of the Northern Mariana Islands created the Northern Mariana Islands Retirement Fund ("Retirement Fund") for the benefit of its public employees. The Commonwealth eventually fell behind on its contributions to the Retirement Fund, prompting retirees to initiate a class action. The parties settled their dispute, and an entity called the NMI Settlement Fund was named as Trustee. The resulting settlement agreement guaranteed class members at least 75% of their "Full Benefits," as defined by statute and by Article III, section 20(a) of the Commonwealth Constitution. Plaintiff Rosa A. Camacho was a class member. Years after the settlement occurred, Plaintiff asserted that, under the settlement agreement, the Settlement Fund owes her a decade's worth of unpaid cost-of-living allowances ("COLAs"). The district court disagreed, holding that section 20(a)—as incorporated into the settlement agreement—did not guarantee Plaintiff such payments because Commonwealth law did not provide for COLAs when she first joined the retirement system. Plaintiff timely appeals, arguing that she accrued a right to receive COLAs because they were introduced during her membership in the retirement system.

For the reasons that follow, we defer consideration of this matter and certify the important legal question at the center of this appeal to the Supreme Court of the Commonwealth of the Northern Mariana Islands.

## QUESTION CERTIFIED

Because the outcome of this appeal depends on the resolution of an important question of Commonwealth law with no controlling precedent, we respectfully request that

the Commonwealth Supreme Court exercise its discretion to accept certification of the following question:

> Did section 8334(e) of the Northern Mariana Islands Retirement Fund Act of 1988, 1989 N. Mar. I. Pub. L. 6-17, grant Class II members of the Northern Mariana Islands Retirement Fund, who were already employed by the Commonwealth when the Act took effect, an accrued cost-of-living-increase benefit that may not be diminished or impaired under the terms of Article III, section 20(a) of the Commonwealth Constitution?

Pursuant to Northern Mariana Islands Supreme Court Rule 13, we provide the following background to aid the Commonwealth Supreme Court in deciding whether to accept certification.  We understand that the court may reframe our question if certification is accepted.  United States v. Borja, 2003 MP 8 ¶ 2 n.4.  If the court declines certification, "we will resolve the issue[] according to our understanding of Commonwealth law."  Peter-Palican v. Gov't of Commonwealth of N. Mar. I., 673 F.3d 1013, 1014 (9th Cir. 2012).

## STATEMENT OF FACTS AND PROCEEDINGS

Article III, section 20(a) of the Commonwealth Constitution provides:  "Membership in an employee retirement system of the Commonwealth shall constitute a contractual relationship.  Accrued benefits of this system shall be neither diminished nor impaired."  N. Mar. I. Const. art. III, § 20(a).

Case: 1:09-cv-00023   Document 875   Filed 12/10/24   Page 5 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 5 of 26

CAMACHO V. NMI SETTLEMENT FUND          5

The question here is whether, under § 20(a), Plaintiff acquired an "accrued" benefit, in the form of COLAs, because of her status as a Class II member of the Retirement Fund.[1]   Today, two sections of the Northern Mariana Island's Code bear on the granting of COLAs to Class II members:  1 Northern Mariana Islands Code section 8344, which addresses retirement annuities for Class II members, and 1 Northern Mariana Islands Code section 8358, which covers annual cost-of-living increases generally.[2]  We will trace the development of those provisions and the timeline of Plaintiff's membership before summarizing this action's procedural history.

A.  History of COLAs and of Plaintiff's Membership in the Retirement Fund

The Commonwealth created the Retirement Fund in 1980.  1980 N. Mar. I. Pub. L. 1-43 §§ 1, 3 ("1980 Act"). Plaintiff, along with all other then-active government employees, became members of the Retirement Fund on October 1 of the same year.  Id. §§ 7(a), 45.  The 1980 Act provided for, among other benefits, annuities for eligible members of the Retirement Fund.  Id. § 11(a).  The 1980 Act did not, however, include COLAs.  See id. § 12 (listing the variables to be used in calculating annuity payments without mentioning cost-of-living increases).

---

[1] The Commonwealth's statutory framework distinguishes between members who joined the Retirement Fund before 1989 ("Class II") and those who became members after 1989 ("Class I").  1989 N. Mar. I. Pub. L. 6-17, ch. 1, § 8314(l)–(m).  Plaintiff is a member of Class II.

[2] For the sake of clarity, we will refer to "section 8344" and "section 8358" throughout this opinion, even though earlier versions of those provisions were numbered differently.

Case 1:09-cv-00023   Document 875   Filed 12/10/24   Page 6 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 6 of 26

6                 CAMACHO V. NMI SETTLEMENT FUND

Before Plaintiff retired, the Commonwealth introduced COLAs for certain retirees by enacting the earliest versions of today's section 8344(e).   In 1989, the legislature authorized COLAs for retirees over the age of 62.  1989 N. Mar. I. Pub. L. 6-17, ch. 3, § 8334(e) ("1989 Act").  Then, in 1991, the legislature dropped the minimum age for receiving COLAs from 62 to 55.  1991 N. Mar. I. Pub. L. 7-39, § 3 ("1991 Act").

Plaintiff retired in December 1991 at the age of 40.  At that time, section 8344(e) stated, in relevant part:

> Class II members retirement annuity shall be calculated as follows:[3]
>
>  . . .
>
> (e) Members in receipt of service retirement annuity shall be entitled to a 2 percent cost of living increase commencing on the anniversary of the member's retirement date, provided the member is at least 55 years of age.   The cost of living increase shall be computed utilizing simple interest.

Id.

Because Plaintiff was younger than 55, she could not receive a cost-of-living increase under section 8344(e) when

---

[3] This introductory clause is quoted from the 1989 Act, not the 1991 Act. 1989 N. Mar. I. Pub. L. 6-17, ch. 3, § 8334.  The 1991 Act amended only subsection (e) of section 8344 and did not mention or otherwise alter the remainder of section 8344.  1991 N. Mar. I. Pub. L. 7-39, § 3.

Case 1:09-cv-00023   Document 875   Filed 12/10/24   Page 7 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 7 of 26

CAMACHO V. NMI SETTLEMENT FUND                    7

she retired.[4]  Before Plaintiff became eligible, that is, before she turned 55, the legislature made a final change to section 8344.  See 1993 N. Mar. I. Pub. L. 8-31, § 8 ("1993 Act") (adjusting the timing of COLA distributions and removing the reference to simple interest from section 8344(e)).

In 1993, the legislature enacted an early version of section 8358.  In full, the provision stated:

> Class I and Class II members in receipt of a service retirement annuity shall be provided an annual cost of living increase.  The annuity amount will automatically increase on the first day of the quarter following approval by the Board of Trustees.
>
> The cost of living increase will be the same as used by the United States of America Social Security System for its beneficiaries, but not less than two percent.  The cost of living increase percentage will be applied to

---

[4] Plaintiff was, however, eligible to receive COLAs pursuant to another provision of the 1991 Act.  That provision—the original version of today's section 8358—authorized COLAs for retirees under the age of 55.  1991 N. Mar. I. Pub. L. 7-39, § 1.  Such payments were not guaranteed; rather, the 1991 Act conditioned COLAs for those younger than 55 on the "appropriation of the required funding by the government."  Id. § 1(1)(a).  Plaintiff benefitted from the under-55 COLAs in both 1992 and 1993.  Thereafter, the legislature did away with COLAs for those younger than 55 by repealing and replacing section 8358.  1993 N. Mar. I. Pub. L. 8-31, § 1.  In this court, Plaintiff is not pursuing payment for COLAs that she might have received had the legislature not repealed the 1991 Act's version of section 8358.

> the previous year's annuity amount and paid
> in equal semi-monthly increments.

Id. § 1.  As a result, Commonwealth law seemingly promised annual cost-of-living increases, see id. (providing that members "shall" receive COLAs (emphasis added)), of at least two percent, id.

In 2003, the Commonwealth overhauled its public retirement system because the "system [was] saddled with an unfunded liability that threaten[ed] its financial soundness." 2003 N. Mar. I. Pub. L. 13-60 § 2 ("2003 Act"). As pertinent here, the 2003 Act removed from section 8358 the two-percent floor for COLA rates.  Id. § 6(f).

Plaintiff turned 55—and thus become eligible for COLAs pursuant to section 8344(e)—in 2006.  Even though COLA rates were no longer guaranteed to exceed two percent, Plaintiff received an increase of 2.25% in 2007. Then, with the government's unfunded liability approaching $500 million, 2007 N. Mar. I. Pub. L. 15-70 § 2, the legislature further restricted cost-of-living increases in 2007, see id. § 4(b) (limiting the application of COLAs "to the first [$30,000] of the previous year's annuity amount").  Still, Plaintiff benefited from a 2.28% COLA in 2008.  Her rate dropped, however, to 1.97% in 2009 and to 1.44% in 2010.

In 2011, the legislature revisited cost-of-living increases for the last time by remodeling section 8358 once more. 2011 N. Mar. I. Pub. L. 17-32 § 2 ("2011 Act").  Among other adjustments, the 2011 Act (1) made COLA payments discretionary rather than mandatory by replacing "shall" with "may"; (2) gave the Retirement Fund's board the power to set COLA rates each year, with the Social Security Administration's rates providing only a "guideline";

Case 1:09-cv-00023   Document 875   Filed 12/10/24   Page 9 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 9 of 26

CAMACHO V. NMI SETTLEMENT FUND                    9

(3) authorized the Board to pay annual retirement bonuses in lieu of COLAs; and (4) allowed the Board to grant COLAs only when the legislature appropriates funds for that purpose. Id. Since 2011, section 8358 has read, in relevant part, as follows:

> (a) Eligible class I and class II members in a receipt of a service retirement or disability annuity and eligible surviving spouses may be provided an annual cost of living increase. . . .
>
> (b) The cost of living increase will be set by the board each year, using as a guideline, the rate used by the United States of America Social Security System for its beneficiaries. . . .
>
> (c) Notwithstanding any law to the contrary, the Board of Trustees of the NMI Retirement Fund are hereby authorized to vote by 2/3 of its membership, each year, to grant an annual retirement bonus ("ARB") in lieu of a cost of living allowance ("COLA"). . . .
>
> (d) The board shall pay as a COLA or ARB only such amount as the Legislature appropriates for this purpose each year.

1 N. Mar. I. Code § 8358.

In the wake of the 2011 Act, Plaintiff stopped benefiting from annual cost-of-living increases altogether. Though she was granted some form of smaller "bonus" payments in 2011 and 2012, Plaintiff has not received a COLA since 2010.

B.  Procedural History

1.  Class Action and Resulting Settlement Agreement

Retirees   initiated   a   class   action   against   the Commonwealth in federal district court in 2009, alleging that the Commonwealth's failure to pay annual contributions to the by-then "grossly underfunded" Retirement Fund had diminished   their   benefits.   In   2013,   the   district   court approved a settlement agreement and retained jurisdiction to enforce its terms.[5]

Under the settlement, all assets, rights, and liabilities of the Retirement Fund were transferred to the Settlement Fund.   Final   Amended   Stipulation   &   Agreement   of Settlement ("Settlement Agreement") §§ 8.0, 8.0(b), D. Dkt. 468-1.  Further, members of the settlement class (including Plaintiff), who had all been members of the Retirement Fund, became members of the Settlement Fund.  Id. § 8.0(a).

Other   provisions   addressed   the   interpretation   and enforcement of the Settlement Agreement itself.  One item created   an   administrative   process   for   handling   disputes between the Settlement Fund and its members.  Id. § 10(k). Another granted the district court "exclusive jurisdiction to enforce   and   interpret   any   provision"   of   the   Settlement Agreement.  Id. § 28.

Most importantly for present purposes, the Settlement Agreement stated:  "The Settlement Class Members shall be entitled each year to receive 75% of their Full Benefits" until

---

[5] Although the district court initially stayed the case in early 2010 under the Colorado River abstention doctrine, the district court reversed course in late 2012, finding federal question jurisdiction to hear the case and "an obligation   to   exercise   jurisdiction   when   nothing   meaningful   and substantial [had] been done in the Superior Court proceedings."

Case 1:09-cv-00023    Document 875    Filed 12/10/24    Page 11 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 11 of 26

CAMACHO V. NMI SETTLEMENT FUND                11

"the Settlement Fund has sufficient assets to pay more and remain actuarially sound." Id. § 7.0. The Settlement Agreement defined "Full Benefits" in the alternative, as benefit payments in the amount (1) "defined by 1 [N. Mar. I. Code] § 8301 et seq. (excluding any changes by P.L. 17-82 or P.L. 18-02) as those laws existed on June 26, 2013"; or (2) "guaranteed by N. Mar. I. Const. art. [III],[6] § 20(a) as it existed in [sic] June 26, 2013." Id. § 1.13.

### 2. The Instant Dispute

In 2016, the Settlement Fund informed Plaintiff that she had been overpaid due to a miscalculation regarding her past overtime compensation and that her future benefits would be reduced as a result. Plaintiff filed an administrative appeal. During the administrative proceedings, Plaintiff claimed that the Settlement Fund had, in fact, underpaid her by failing to provide COLAs.

Arguing that the question whether the Settlement Agreement guaranteed Plaintiff COLAs was for the district court, not for the administrative process, the Settlement Fund sought to force Plaintiff to litigate the issue in federal court. Plaintiff responded by asking the district court to decide both the COLA and the overtime questions in her favor.[7]

---

[6] The Settlement Agreement refers to Article II, § 20(a) of the Commonwealth Constitution. As the district court noted, however, that reference must have been a typo, because no such provision exists.

[7] The district court decided that, under the Settlement Agreement, it had jurisdiction to decide the COLA question but that Plaintiff had to continue pursuing her overtime-related claims through the administrative process. Plaintiff's appeal, therefore, does not involve the overtime-related claims.

Case 1:09-cv-00023 Document 875 Filed 12/10/24 Page 12 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 12 of 26

12          CAMACHO V. NMI SETTLEMENT FUND

The district court concluded that Plaintiff's "Full Benefits" did not include COLAs under either of the definitions provided in the Settlement Agreement. The court first reasoned that cost-of-living increases were not statutorily guaranteed because, as of July 26, 2013, section 8358(d) conditioned the availability of COLAs on discretionary legislative action. Second, the district court concluded that Article III, section 20(a) of the Commonwealth Constitution did not guarantee Plaintiff COLAs because no such payments existed in Commonwealth law when she joined the Retirement Fund in 1980.

Plaintiff timely appealed, seeking to recover "unpaid COLA for the years from 2009 to the present at the rate that beneficiaries of the United States Social Security System were paid but not less than 2% per annum." She does not challenge the district court's interpretation of section 8358, as amended by the 2011 Act. Rather, Plaintiff argues that applying the current version of section 8358 would violate her constitutional rights under § 20(a) because COLAs were incorporated into her benefits before she retired from public service.

## EXPLANATION OF CERTIFICATION

We have jurisdiction to consider this appeal under 28 U.S.C. § 1291. We review de novo a district court's interpretation of a settlement agreement. Parsons v. Ryan, 912 F.3d 486, 495 (9th Cir. 2018). We may certify, sua sponte, questions to the highest court of a state or territory. DW Aina Leʻa Dev., LLC v. Haw. Land Use Comm'n, 918 F.3d 602, 609 n.6 (9th Cir. 2019); see also In re Complaint of McLinn, 744 F.2d 677, 681 (9th Cir. 1984) ("Use of certification rests in the sound discretion of this court."). In

determining whether to certify the question presently before us, we consider the Commonwealth's rules of appellate procedure and the significance of the question itself.  DW Aina Leʻa, 918 F.3d at 609.

Under Northern Mariana Islands Supreme Court Rule 13, a federal court may certify questions of Northern Mariana Islands law to the Commonwealth Supreme Court when (1) the "question may be determinative in the proceedings before [the federal court]" and (2) there is "no controlling precedent from [the Commonwealth Supreme Court]."  NMI Sup. Ct. R. 13(a).  Because both of those conditions are met, and because the question at hand has significant implications for the Commonwealth's government, fisc, and public employees, we conclude that certification is appropriate.

A.  Effect of the Certified Question on These Proceedings

The sole question in this appeal is whether Plaintiff's "Full Benefits," as defined in the Settlement Agreement, include cost-of-living increases.  Because the definition of "Full Benefits" incorporates the protections guaranteed by Article III, § 20(a) of the Commonwealth's Constitution, an answer to the certified question would be dispositive of the issues presented in this case.

B.  Absence of Controlling Precedent

Attempting to apply § 20(a) to Plaintiff's claim raises two interrelated questions.  The first pertains to when benefits "accrue" to members of the Retirement Fund, an issue that the Commonwealth Supreme Court touched on in Cody v. Northern Mariana Islands Retirement Fund, 2011 MP 16.  The second—on which Taisague v. Inos, 2014 MP

14   CAMACHO V. NMI SETTLEMENT FUND

13, has some bearing—asks whether cost-of-living increases, as described in Commonwealth law, constitute "benefits" that can accrue at all. Although those two cases provide some guidance, neither conclusively answers the questions at hand. The same holds true for precedents from Alaska and Hawaii, states with constitutional provisions that are nearly identical to § 20(a).

> ### 1. Timing of Benefit Accrual

In Cody, the Commonwealth Supreme Court explored whether a law that reduced disability annuities could apply retroactively to the Retirement Fund's pre-existing members. 2011 MP 16, ¶ 28. Applying a "presumption of prospective application" to the statute, id. ¶ 29, the Court held that the law "was intended to apply only . . . to persons who became members of the Fund after its enactment date," id. ¶ 31.

Though focused principally on statutory interpretation, the Cody Court looked to § 20(a) to bolster its decision. The Court noted that "accrued," as used in § 20(a), "has the same meaning as 'vested.'" Id. ¶ 32. And, the Court explained, "persons acquire an accrued or vested right to . . . retirement benefits by virtue of their membership in the Fund." Id. ¶ 33 (emphasis added). Cody then concluded that applying the statute retroactively would violate § 20(a), because "forcing plan members to receive . . . benefits at the lower . . . rate" would "impair the[ir] vested rights." Id. ¶ 34.

Cody makes one point clear: Membership is key to accrual of benefits. That holding helps to narrow the scope of Plaintiff's claim. For purposes of this appeal, we assume that Plaintiff's "membership"—as the term is used in § 20(a)—began when she joined the Retirement Fund in October 1980 and ended at her retirement in December

Case 1:09-cv-00023    Document 875    Filed 12/10/24    Page 15 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 15 of 26

CAMACHO V. NMI SETTLEMENT FUND          15

1991.**8**    So, to the extent that § 20(a) might guarantee
Plaintiff cost-of-living increases, her vested rights would be
defined by the 1989 and 1991 Acts.  And notably, both acts
provided for a flat two-percent COLA rate.  1989 N. Mar. I.
Pub. L. 6-17, ch. 3, § 8334(e); 1991 N. Mar. I. Pub. L. 7-39,
§ 3.  Plaintiff therefore cannot rely on the more generous
formulation of COLA included in the 1993 Act, as she
attempts to do here.  1993 N. Mar. I. Pub. L. 8-31, § 1.

Cody does not, however, provide a definitive answer
regarding when, during one's membership, a benefit accrues.
The Settlement Fund reads Cody to hold that benefits vest
only at the moment when an individual first becomes a
member.    That view, which the district court adopted,
appears to arise from the wording of cases that Cody quoted.
In Kern v. City of Long Beach, 179 P.2d 799 (Cal. 1947),
for example, the California Supreme Court rejected the
city's attempt to repeal a pension days before the petitioner's
20-year work anniversary and held that "the right to a
pension vests upon acceptance of employment."  Id. at 801.
But it is unclear whether Cody or Kern should be interpreted
to hold that benefits vest only at the beginning of one's
employment and remain static throughout the remainder of
one's term of employment.  For example, that interpretation
does not account for the often-significant span of time
between someone's first day and retirement date.  Indeed,

---

8 At oral argument, Plaintiff's lawyer raised for the first time the
contention that her membership in the Retirement Fund continues to this
day.  We decline to entertain that argument, which Plaintiff forfeited by
omitting it from her opening brief.  Orr v. Plumb, 884 F.3d 923, 932 (9th
Cir. 2018).    Moreover, the assertion that Plaintiff's membership is
ongoing contradicts her own briefing.  See Pl.'s Reply Br. at 7
("Camacho remained a member of Fund from 1980 until she
retired . . . .").

such a rule would arguably enable the behavior that <u>Kern</u> forbade. If one's start date controlled, an employer could revoke a benefit that had been granted decades earlier so long as the employer did not provide the benefit when the employee came onboard.

For her part, Plaintiff contends that, under <u>Cody</u>, benefits that are introduced at <u>any</u> point during one's membership can vest. That interpretation, too, is uncertain. True, <u>Cody</u> held that a specific piece of benefit-reducing legislation could not apply to "[p]ersons who were members of the Fund prior to" its enactment, 2011 MP 16, ¶ 2, and Plaintiff joined the Retirement Fund well before the 2011 Act converted COLAs into a discretionary benefit. But she was also a member before the legislature ever authorized COLAs. Put another way, <u>Cody</u>—and, for that matter, <u>Kern</u>—considered a situation in which benefits that existed at time 1 had vanished by time 2. By contrast, this case involves benefits that did not exist at time 1, were introduced at time 2, and had disappeared by time 3. <u>Cody</u> does not address, at least expressly, that scenario.

In short, <u>Cody</u> does not provide a clear answer to the question presented in this appeal.

### 2. Whether a COLA Constitutes a Benefit that Can Accrue

Even assuming that benefits introduced during one's membership <u>can</u> vest, the question remains whether cost-of-living increases authorized by the Commonwealth during Plaintiff's membership constitute benefits that <u>did</u> vest. Although the Commonwealth Supreme Court has not elaborated on that topic, the Court has pointed to caselaw regarding the United States Constitution's Contract Clause as a useful tool for interpreting § 20(a). See <u>Taisague</u>, 2014

Case 1:09-cv-00023 Document 875 Filed 12/10/24 Page 17 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 17 of 26

CAMACHO V. NMI SETTLEMENT FUND          17

MP 13, ¶¶ 12, 15 (discussing the Commonwealth Constitution's Contract Clause and § 20(a) by analogizing to United States Supreme Court precedent and stating that "the Court's analysis of the NMI Constitution is informed by the interpretation of analogous United States Constitution provisions").

The federal Contract Clause provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. The threshold analysis for evaluating Contract Clause claims has three components: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." LL Liquor, Inc. v. Montana, 912 F.3d 533, 537 (9th Cir. 2018) (quoting Gen. Motors Corp. v. Romein, 503 U.S. 181, 186 (1992)).

Generally, satisfying the first component requires a "clear indication that the legislature intend[ed] to bind itself contractually" to provide the benefit at issue. Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co., 470 U.S. 451, 465–66 (1985). Though we have yet to undertake the clear-indication inquiry in the context of a case involving COLAs, decisions from other jurisdictions highlight criteria worthy of consideration.

Some courts have asked whether the relevant statutory framework specifies that "a retirement allowance includes COLAs." Am. Fed'n of Tchrs. v. State, 111 A.3d 63, 73 (N.H. 2015) (emphasis added); see also Bartlett v. Cameron, 316 P.3d 889, 894 (N.M. 2013) ("[T]he omission of a COLA provision from the statute that defines an employee's substantive right to a retirement benefit disqualifies the COLA as a property right.").

Others have looked at the state legislature's historic handling of COLAs; when the legislature has adjusted COLAs frequently, courts have hesitated to find a contractual right to cost-of-living increases. See Justus v. State, 336 P.3d 202, 212 (Colo. 2014) (finding no constitutional violation when "[m]odifications over the past half century reflect[ed] the legislature's unbridled management of the COLA"); Berg v. Christie, 137 A.3d 1143, 1160 (N.J. 2016) (rejecting Contract Clause claim when the legislature "granted COLAs as periodic exercises of legislative discretion separate and apart from the base pension, responding to evolving economic, social, and political dynamics").

More generally, several courts have expressed skepticism toward COLA-related Contract Clause claims because cost-of-living increases are, by their nature, separate from the benefits to which they are applied. See Bartlett, 316 P.3d at 893 ("[A] cost-of-living adjustment to a retirement benefit, by it[s] own terms, is not necessarily the same thing as the underlying retirement benefit." (emphasis omitted)). The First and Sixth Circuits expressed such concerns when considering, and rejecting, Contract Clause claims involving COLAs. See Me. Ass'n of Retirees v. Bd. of Trs. of Me. Pub. Emps. Ret. Sys., 758 F.3d 23, 31 (1st Cir. 2014) (observing that the legislature "arguably treated the base pension amount as the benefit, . . . and COLA increases as potentially temporary adjustments to that benefit"); Puckett v. Lexington-Fayette Urb. Cnty. Gov't, 833 F.3d 590, 604 (6th Cir. 2016) ("A COLA is an adjustment to a retiree's annuity payment—not a benefit itself." (emphasis omitted)).

Applied here, the above considerations present a mixed bag. Supporting Plaintiff's position, the text of the 1989

Act—which introduced COLAs during Plaintiff's tenure—contrasts with the statutes analyzed in cases like Bartlett. Unlike those statutes, the 1989 Act builds COLAs firmly into the definition of the promised retirement annuity. See 1989 N. Mar. I. Pub. L. 6-17 § 8334(e) ("Class II members retirement annuity shall be calculated as follows: . . . . (e) Members in receipt of service retirement annuity shall be entitled to a 2 percent cost of living increase . . . ." (emphasis added)). Moreover, the requirement that there be a clear indication that a legislature intended to bind itself arises from the presumption that "a law is not intended to create private contractual or vested rights." Nat'l R.R. Passenger Corp., 470 U.S. at 466 (quoting Dodge v. Bd. of Educ., 302 U.S. 74, 79 (1937)). But the first sentence of § 20(a) casts doubt on the applicability of that presumption when considering the protection afforded to public retirement benefits in the Commonwealth. See N. Mar. I. Const. art. III, § 20(a) ("Membership in an employee retirement system of the Commonwealth shall constitute a contractual relationship."). Between the strong wording used in both the 1989 Act and § 20(a), Plaintiff's claim invites less skepticism than did the claims in Maine Ass'n of Retirees and Puckett.

Undermining Plaintiff's claim, however, is the legislature's habit of tinkering with COLAs regularly. Indeed, after introducing COLAs in 1989, the legislature revisited cost-of-living increases in 1991, 1993, 2003, 2007, and 2011. As in Justus and Berg, that level of activity suggests that the legislature intended to maintain the ability to adjust the availability of COLAs as needed to respond to "evolving economic, social, and political dynamics." Berg, 137 A.3d at 1160. The fact that later amendments made

Case 1:09-cv-00023   Document 875   Filed 12/10/24   Page 20 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 20 of 26

20          CAMACHO V. NMI SETTLEMENT FUND

COLAs contingent on legislative appropriations reinforces that inference.

Consequently, <u>Taisague</u>'s instruction to consult federal Contract Clause caselaw when interpreting § 20(a) yields no clear answer to the certified question.

### 3. Jurisdictions with Constitutional Provisions Resembling § 20(a)

Finally, we turn to another source previously relied on by the Commonwealth Supreme Court:   caselaw from Alaska and Hawaii.   <u>See</u> <u>Cody</u>, 2011 MP 16, ¶ 34 (explaining the interworkings of § 20(a) by citing <u>Sheffield v. Alaska Public Employees' Ass'n, Inc.</u>, 732 P.2d 1083 (Alaska 1987), and <u>Everson v. State</u>, 228 P.3d 282 (Haw. 2010)).   Both states have constitutional provisions that closely resemble § 20(a).[9]

#### a. Alaska

Plaintiff would have a strong case to make if Alaska law applied.   Article XII, § 7 of the Alaska Constitution closely tracks   § 20(a),   stating:    "Membership   in   employee retirement systems of the State or its political subdivisions

---

[9] Courts often put Michigan's constitution in this category, too. <u>See, e.g.,</u> <u>Fields v. Elected Offs.' Ret. Plan</u>, 320 P.3d 1160, 1166 (Ariz. 2014) (lumping together Michigan's, Hawaii's, and Alaska's constitutional protections for accrued benefits).   But Michigan's provision is arguably more limited, applying only to "accrued <u>financial</u> benefits."   Mich. Const., art. 9, § 24 (emphasis added).   And in recent years, courts in those states   have   distanced   themselves   from   one   another.    <u>See</u> <u>Kahoʻohanohano v. State</u>, 162 P.3d 696, 749 (Haw. 2007) (declining to follow Michigan case law given the differences between their respective constitutional provisions); <u>Metcalfe v. State</u>, 484 P.3d 93, 97 n.25 (Alaska 2021) (noting that Alaska's courts define "accrued benefits" more broadly than those in Michigan).

shall constitute a contractual relationship.  Accrued benefits of these systems shall not be diminished or impaired." Alaska Const. art XII, § 7.  And the Supreme Court of Alaska has, in general, interpreted § 7 broadly.

Regarding the temporal question of when benefits can accrue, the Supreme Court of Alaska has held that an employee can acquire a vested right to a benefit that was introduced <u>after</u> his first day on the job.  See <u>Alford v. State</u>, 195 P.3d 118, 123–24 (Alaska 2008) (explaining that, when the government revises benefit packages several times, employees are "entitled to the best benefits available" and may, with some limitations, "choose those benefits for themselves").  So, the fact that Plaintiff's retirement package did not include COLAs when she joined the Retirement Fund likely would not preclude her from claiming those benefits under Alaska law.

To determine whether a specific benefit has in fact accrued, Alaska's courts ask whether the benefit constituted "an element of the consideration that the state contracts to tender in exchange for services rendered by the employee." <u>Duncan v. Retired Pub. Emps. of Alaska, Inc.</u>, 71 P.3d 882, 887 (Alaska 2003).  To answer that question, courts evaluate the statute authorizing the benefit, the regulations implementing that statute, and the government's historical practices in administering the benefit.  <u>McMullen v. Bell</u>, 128 P.3d 186, 190–91 (Alaska 2006).  If that analysis reveals the promise of a benefit on which the employee objectively could have relied when deciding to enroll—or remain—in the retirement system, then § 7's protections apply. <u>Metcalfe</u>, 484 P.3d at 100.

The preceding discussion, including its focus on the statutory description of benefits, works in Plaintiff's favor.

The 1989 Act—enacted before Plaintiff's retirement—speaks in mandatory terms, stating that Class II members shall receive COLAs as part of their annuities. 1989 N. Mar. I. Pub. L. 6-17 § 8334(e). And in Alaska, "the vested rights protected by the anti-diminishment provision 'necessarily include . . . the dollar amount of the benefits payable.'" Dep't of Admin. v. Retired Pub. Emps. of Alaska, Inc., 502 P.3d 422, 433 (Alaska 2022) (quoting Hammond v. Hoffbeck, 627 P.2d 1052, 1058 (Alaska 1981)).

We do not suggest, however, that Plaintiff would be guaranteed a victory in Alaska. For one thing, Alaska's courts have yet to consider whether COLAs, specifically, are constitutionally protected. And in explaining the rationale behind its liberal approach to enforcing § 7, the Supreme Court of Alaska has emphasized the importance of inducing people to enter, and continue in, public service. See Hammond, 627 P.2d at 1057 n.10 (noting that, because governments cannot compete with private industry salaries, they rely on attractive retirement benefits to recruit and retain employees). That explanation is notable, because courts in other states have found that COLAs do not incentivize employee retention in the same way that other benefits do. See Wash. Educ. Ass'n v. Wash. Dep't of Ret. Sys., 332 P.3d 439, 446 (Wash. 2014) (explaining that COLAs do not "'induce continued faithful service' in the same way that a basic pension plan [does]" (quoting Jacoby v. Grays Harbor Chair & Mfg. Co., 468 P.2d 666, 669 (Wash. 1970))). Still, there is reason to doubt whether the Supreme Court of Alaska would share such reservations; as a general rule, that court "favors defining ['accrued benefits'] broadly." Dep't of Admin., 502 P.3d at 430.

We also acknowledge that the Supreme Court of Alaska has declined to prohibit the state legislature from adjusting

Case 1:09-cv-00023   Document 875   Filed 12/10/24   Page 23 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 23 of 26

CAMACHO V. NMI SETTLEMENT FUND          23

benefits that have <u>already</u> accrued.  For example, <u>Duncan</u> held that retirement funds may modify benefits for the sake of keeping themselves afloat, so long as the funds offset any resulting disadvantages to members.  71 P.3d at 889 & n.26. Applying that logic here, the Commonwealth's government arguably had license to adjust retirement benefits in light of impending financial headwinds.  But that principle has no obvious effect on this appeal; the record reveals nothing to suggest that the Commonwealth has offset the lack of COLAs in recent years with other benefits.[10]

Overall, Alaska's jurisprudence regarding the state's version of § 20(a) provides strong—though perhaps not emphatic—support to Plaintiff's claim.

### b. Hawaii

Article XVI, § 2 of the Hawaii Constitution provides: "Membership in any employees' retirement system of the State or any political subdivision thereof shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired."  Haw. Const. art. XVI, § 2. Like Alaska's constitutional provision, this section resembles § 20(a).

Decisions from the Supreme Court of Hawaii regarding § 2 also resemble, in some respects, rulings from its Alaskan

---

[10] <u>Duncan</u> also contemplated the possibility that the government may one day need to reduce benefits on a wider scale to save the entire retirement system.  71 P.3d at 889 & n.25. Ultimately, however, the court declined to forecast how the state's constitution would apply in those circumstances.  <u>Id.</u>  The Commonwealth Supreme Court has also demurred on that subject.  <u>See</u> <u>Cody</u>, 2011 MP 16, ¶ 34 n.20 ("We do not reach the issue of whether or under what circumstances the legislature may be able to reasonably modify the vested rights of Fund members.").

Case 1:09-cv-00023   Document 875   Filed 12/10/24   Page 24 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 24 of 26

24        CAMACHO V. NMI SETTLEMENT FUND

counterpart.  For example, the Supreme Court of Hawaii has refused to limit the applicability of § 2 to only those benefits that existed when an employee's membership began.  See Everson, 228 P.3d at 296 ("[S]ection 2 provides protection for any additional benefits that the legislature may decide to provide to state and county government employees . . . ." (emphasis added)).

Hawaii's caselaw otherwise provides little in the way of clear guidance.  Everson asked whether benefits are tied to an employee's past work or future service, reasoning that the government could diminish the future benefits of current employees, so long as "changes d[o] not reduce an employee's benefits attributable to past services."  Id. at 299.  That logic suggests that the Commonwealth could repeal COLAs associated with Plaintiff's future service.  But it is not immediately clear whether the Supreme Court of Hawaii would classify COLAs—which existed only for the final two years of Plaintiff's 11-year membership—as related to Plaintiff's past or future labor.  In addition, courts in Hawaii, like those in Alaska, have not yet analyzed COLAs under the state constitution.[11]

C.  Importance of the Certified Question

Finally, the certified question presents novel issues of Commonwealth law that could have far-reaching fiscal

---

[11] We note that the Supreme Court of Arizona has decided that the state constitution's Pension Clause protects certain COLAs.  Fields, 320 P.3d at 1166.  But that Clause provides broader protections than do the Alaska and Hawaii constitutions.  See id. ("[U]nlike narrower protections found in other states' constitutions, the protection afforded by the Arizona Pension Clause extends broadly and unqualifiedly to 'public retirement system benefits,' not merely benefits that have 'accrued' or been 'earned' or 'paid.'" (citations omitted)).

consequences. If § 20(a) requires COLAs to be paid to all individuals who, like Plaintiff, were members of the Retirement Fund at the time of enactment of the 1989 Act or the 1991 Act, the financial burden on the Commonwealth's already-strained retirement system could be significant. Conversely, a ruling in Plaintiff's favor could better the financial position of numerous retirees. Therefore, "considerations of comity and federalism favor" certification. Orange Cnty. Dep't of Educ. v. Cal. Dep't of Educ., 650 F.3d 1268, 1269 (9th Cir. 2011).

## CONCLUSION

Given the lack of controlling caselaw regarding the applicability of Article III, section 20(a) of the Commonwealth Constitution to—and the potentially significant financial ramifications of—Plaintiff's claim, we respectfully request that the Commonwealth Supreme Court accept certification of the question identified above.

## ADMINISTRATIVE INFORMATION

The names of the parties' lawyers, as well as their contact information, are as follows:

For Plaintiff-Appellant Rosa A. Camacho:

Jeanne H. Rayphand

Northern Marianas Protection & Advocacy Systems, Inc.

P.O. Box 502020, Saipan, MP 96950

(670) 235-7273

jeanneesq@yahoo.com

Case 1:09-cv-00023   Document 875   Filed 12/10/24   Page 26 of 26
Case: 23-16074, 12/09/2024, ID: 12916584, DktEntry: 37, Page 26 of 26

26            CAMACHO V. NMI SETTLEMENT FUND

For Defendant-Appellee NMI Settlement Fund

    Nicole M. Torres-Ripple

        NMI Settlement Fund

        P.O. Box 501247, Saipan, MP 96950

        (670) 322-3863

        nicole.m.torres-ripple@nmisf.com

    G. Patrick Civille, Esq.

        Civille & Tang, PLLC

        330 Hernan Cortez Avenue, Suite 200

        Hagatna, GU 96910

        (671) 477-2511

        pciville@civilletang.com

As required by Northern Mariana Islands Supreme Court Rule 13(b), the Clerk is directed to forward this request, under official seal, to the Commonwealth Supreme Court.

Submission of this appeal for decision is vacated and deferred pending the Commonwealth Supreme Court's final response to this certification order. The Clerk is directed to close this docket administratively, pending further order. The parties shall notify the Clerk of this court within seven days of any decision by the Commonwealth Supreme Court to accept or to decline certification. If the Commonwealth Supreme Court accepts certification, the parties shall notify the Clerk of this court within seven days of the issuance of that court's opinion.

**SUBMISSION VACATED and DEFERRED; QUESTION CERTIFIED; PROCEEDINGS STAYED.**