F I L E D
 Clerk
 District Court
JAN 24 2025
for the Northern Mariana Islands
By_____
              (Deputy Clerk)

UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| BETTY JOHNSON, on behalf of herself, and as a representative of a class of similarly-situated persons,<br><br>                Plaintiffs,<br><br>    v.<br><br>ARNOLD I. PALACIOS, Governor of the Commonwealth of the Northern Mariana Islands ("CNMI"), *et al.*,<br><br>                Defendants. | CIVIL CASE NO. 09-00023<br><br>**ORDER**<br>Post-January 10, 2025 Status Hearing |

This case came before the court for a hearing on January 10, 2025, at which time the appointed Settlement Fund Trustee Joyce C.H. Tang presented an update on the status of the Settlement Fund. Based on Ms. Tang's presentation and the Report of the Trustee filed on January 2, 2025 (the "Report"), *see* ECF No. 879, the court orders the following:

**Budget.** The Trustee's proposed FY 2025 budget as set forth in Exhibit 8 of the Report. The Trustee continues to ensure that the Settlement Fund's operating expenses remain low, and the FY 2025 budget reflects a lean budget, which is a 1.75% reduction from the FY 2024 approved budget. The court finds the proposed budget to be reasonable and accordingly approves said budget.

**Extended Settlement Repayment Periods.** On January 2, 2025, the Trustee filed a Request for Approval of Settlement Repayment Periods. *See* ECF No. 878. The Trustee stated that court approval of eight settled cases was necessary because the agreed-upon repayment terms exceed the two-year limitation set forth in 1 N. MAR. I. CODE § 8390(b). Based on the Trustee's

representations that the financial circumstances of these individuals warrant an extended repayment period, the court grants the motion and orders that the repayment periods be extended as reflected in Exhibit A to the Trustee's motion. *See* ECF No. 878-1.

**Financial Overview.** Today, the Settlement Fund is in a much stronger position than it was during its bleak beginning. In 2014, the Settlement Fund's investment reserves were being depleted, and the investment horizon was five years at best. Despite many challenging years, the CNMI Government – both the executive and legislative branches – has continuously committed to making the required minimum annual payment ("MAP") under the Settlement Agreement. Even with limited revenues, the CNMI Government continued to fund the additional 25% benefit payments to the retirees that is not required under the Settlement Agreement. The Trustee reported that at the end of FY 2024, the Government overpaid the MAP by $1 million, and the Government has already fully paid the FY 2025 MAP. *See* Report at 7-8, ECF No. 879. Based on the diversification efforts of the Trustee and the Settlement Fund's financial adviser Maggie Ralbovsky, a principal of Wilshire, the Settlement Fund's investment portfolio had a strong performance. Over the last year, the Settlement Fund had a Fiscal Year Return of 15.58%, outperforming the policy benchmark. *Id.* at 21. The Settlement Fund's continued success is a testament to what can be accomplished with the cooperation and commitment of the CNMI Governor, Legislature, class counsel, the Trustee, and the Settlement Fund's hard working employees and financial advisors.

**Internal Audit of Member Files.** Back in March 2015, the Settlement Fund utilized a software program to conduct an internal audit of the members' accounts. The software program determined that 400 member accounts had issues, with approximately 276 members having been overpaid by approximately $1.5 million, and 124 members being underpaid by approximately $331,000. *See* Report at 12, ECF No. 879. Since then, the Settlement Fund has had to manually audit members' accounts, giving priority to the audits for retirees, death benefits, administrative appeals, and probate cases. *Id.* at 13. The audit process can be quite lengthy because the audit department has to review years worth of financial records and laws and regulations governing each member's annuity calculations. The court orders the Trustee to file a supplemental report that addresses how many of the initial 400 member accounts have gone through the manual audit

process since March 2015 to confirm whether the software program's results were accurate.[1] A

---

[1] A suggested format for the supplemental report is set forth below. The court suggests presenting the audit information in two separate tables. One table should contain information regarding the initial 400 members identified through use of the software to have either been overpaid or underpaid. The second table should provide information about any other internal audits of members' accounts conducted each year and the status of the audit. *See* Table 2.

In the first example shown in Table 1, of the 124 members who were initially determined to have been underpaid, the Settlement Fund may have completed, 20 of those audits in 2015, leaving 104 requiring audits beginning in 2016. Additionally, if only 10 of the 276 members initially determined to have been overpaid were audited in 2015, this leaves 266 audits remaining in 2016. Then in 2016, the Settlement Fund may have completed another 20 audits of those overpaid and another 30 audits of those underpaid. The Status column should discuss the status of the audits completed that year.

**Table 1 - Initial 400 Accounts Flagged by Software**

| YEAR | OVERPAYMENTS | | | UNDERPAYMENTS | | |
|---|---|---|---|---|---|---|
| | Audits Required | Audits Completed | Status | Audits Required | Audits Completed | Status |
| 2015 | 276 | 10 | 5 settled 5 appeals pending | 124 | 20 | 20 settled |
| 2016 | 266 | 20 | 5 settled 15 appeals pending | 104 | 30 | 30 settled |
| 2017 | 246 | | | 74 | | |
| . . . | | | | | | |
| 2024 | | | | | | |

primary interest of the court is that the initial 124 members who were determined to have been underpaid have gone through the audit process so that they can receive the benefits owed them as soon as possible.

Some members have expressed concern, either in writing or at the hearings, about the audit process. In order for the members to better understand how their benefits are calculated, the court suggests that the Trustee provide further information in the monthly newsletters about the audit process and what documents the members should provide to ensure their benefits are accurately and promptly computed so as to minimize future appeals. The Trustee should also consider preparing a video or posting FAQs on its website to provide the members with further resources.

**Next Status Hearing.** The court schedules the next status hearing for Friday, November 14, 2025, at 10:30 a.m.

IT IS SO ORDERED.



/s/ **Frances M. Tydingco-Gatewood**
         **Designated Judge**
         **Dated: Jan 24, 2025**

**Table 2 - Other Internal Audits of Members**

| YEAR | Number of Audits Conducted | Overpayments | | Underpayments | |
|---|---|---|---|---|---|
| | | Number of Overpayments | Status | Number of Underpayments | Status |
| 2015 | 30 | 20 | 10 settled<br>10 pending appeal | 10 | 10 agreed |
| 2016 | 45 | 15 | 1 settled<br>14 appeals pending | 30 | 25 settled<br>5 appeals pending |
| . . . | | | | | |
| 2024 | | | | | |
| Total | | | | | |